SMITH, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

(No. 216—Decided December 4, 1948.)

*Mr. R. N. Larrimer* and *Mr. Forest E. Weinrich,* for appellee.

*Mr. Hugh S. Jenkins,* attorney general, and *Mr. R. Brooke Alloway,* for appellant.

METCALF, J. Plaintiff's decedent, Herdie L. Smith, on or about February 2, 1946, was employed by the Hocking Valley Brick Company at its place of business in Hocking county, Ohio, and was in charge of the process known as "salting down" the kilns in which ware was baked in the plant of the employer, the decedent being designated as "boss burner."

Decedent had been employed by this company for approximately twenty-nine years and during that period lived in a house owned by the company, for which he paid a small rental, located directly across the highway known as U. S. route No. 33.

In addition to his regular shift of eight hours, decedent was at all times subject to call for the purpose

of performing his duties as boss burner, which particular work he had been performing for approximately two years preceding his death. The process known as salting down is employed for the purpose of setting the glaze on the ware inside the kiln and must be performed when the temperature therein reaches 1800 or 1900 degrees.

The record is clear that the test to be made and the determination of when the salting down was to be done were the sole responsibility of decedent. The record shows also that the ware in the various kilns may reach the proper temperature at any time during the day or night, and that at such times decedent was subject to call in order to make the test and decide when the kiln should be salted down. This was true regardless of the shift of workmen that was on duty at the time, and regardless of what shift the decedent had worked during the twenty-four hour period, he being subject to call around the clock. The testimony of decedent's fellow workmen and foreman shows that decedent had been called many nights for the reason that in his absence no one else was authorized or had the responsibility of performing this duty. The evidence indicates further that the temperature had to be maintained at a constant level during the process of salting down, which required from two and one-half to three hours. Prior to this period it was necessary for decedent to make numerous tests before the salting down began. The kiln foreman testified that the decedent was the chief burner and issued all orders in regard to the burning department, and that if decedent was not there, the foreman or head man on the shift had the duty of going to decedent's home across the highway to get him.

The record indicates also that the decedent was often called to the kilns four or five times or more during

the sixteen-hour period he was off his regular shift.

On the night of February 2, 1946, at about 11 p. m., in pursuance of the above arrangement decedent left his home, went across the highway and checked the kilns. On returning home a few minutes later, while crossing the highway, he was struck by a motor vehicle and killed.

Plaintiff, as the widow of decedent, filed with the Industrial Commission her application for compensation. The commission disallowed her claim. On rehearing the commission found that "the claim be disallowed on rehearing for the reason that the injury did not occur in the course of nor arise out of his employment." From this finding plaintiff filed her petition as provided by law in the Court of Common Pleas of Hocking county, asking that she be allowed to participate in the State Insurance Fund.

The defendant filed an answer admitting that the Hocking Valley Brick Company was an employer amenable to the Workmen's Compensation Act but denying specifically that the decedent at the time mentioned in the petition was in the usual course of his employment. The cause was submitted to the Court of Common Pleas without the intervention of a jury, neither party having demanded the same, and upon consideration that court found upon the issues joined in favor of the plaintiff and that she was entitled to participate in the State Insurance Fund under the provisions of the Workmen's Compensation Act and entered judgment accordingly. From this finding and judgment defendant appealed on questions of law.

There are four separate assignments of error but they all go to the one question, the answer to which determines this appeal, namely, did the injury and death of plaintiff's decedent arise out of and in the course of his employment?

It is a well settled rule of law in Ohio that an injury suffered by an employee in going to or returning from the employer's premises, where the work of his employment is carried on, except in special instances, is not occasioned in the course of his employment, nor does it arise out of his employment so as to entitle him to compensation. *Industrial Commission* v. *Heil,* 123 Ohio St., 604, 176 N. E., 458; *Industrial Commission* v. *Gintert,* 128 Ohio St., 129, 190 N. E., 400, 92 A. L. R., 1032; *Industrial Commission* v. *Harkrader,* 52 Ohio App., 76, 3 N. E. (2d), 61; *Clark* v. *Industrial Commission,* 55 Ohio App., 428, 9 N. E. (2d), 924; *Walborn* v. *General Fireproofing Co.,* 147 Ohio St., 507, 72 N. E. (2d), 95; *Industrial Commission* v. *Baker,* 127 Ohio St., 345, 188 N. E., 560.

There is an exception to this rule found in cases where it is shown that the employee, although not at his regular place of employment, even before or after customary working hours, is performing, is on his way home after performing, or on the way from his home to perform some special service or errand or is discharging some duty incidental to the nature of his employment in the interest of, or under direction of, his employer. In such cases, an injury arising enroute from the home to the place where the work is performed, or from the place of performance of the work to the home, is adjudged by the courts as arising out of and in the course of the employment. *Kyle* v. *Greene High School,* 208 Iowa, 1037, 226 N. W., 71.

In *Walborn* v. *General Fireproofing Co., supra,* the Supreme Court held that where an employee is injured on a parking lot provided by the employer and before the employee had reached the situs of his employment, "the hazard must be peculiar to the work and not common to the general public in the community." The hazard in that case was caused by a gen-

eral storm throughout the community during the pre-
ceding day and night, and, of course, the employee
was not subjected to any hazard above and beyond
that which the general public was subjected to.

In determining whether the employee is subjected
to a peculiar hazard connected with his work not com-
mon to the general public, while traveling to and from
his place of employment, it is important we keep in
mind that the determinative factor is not that others
are exposed to the same dangers of travel, but wheth-
er, with reference to the nature of the employment, the
performance of a special service within the scope of
such employment and in the interest of or by direction
of his employer peculiarily subjects the employee to
the added danger out of which the accident occurred.
*Stockley* v. *School District No. 1 of Portage Twp.*, 231
Mich., 523, 204 N. W., 715.

A case which this court feels sheds a great deal of
light on the question presented is that of *Industrial
Commission* v. *Murphy*, 50 Ohio App., 148, 197 N. E.,
505, decided by the Court of Appeals for Hamilton
county. The syllabus in that case reads:

''Where an undertaker's employee who has no regu-
lar hours of employment but is subject to call at all
hours, is struck by an automobile while responding to
a call from his employer to hurry to the funeral home,
the injuries thus received are sustained during and
by reason of his employment.''

The statement of Judge Ross, speaking for the
court, on page 150, is applicable here:

''It is the contention of the commission that the
actual employment of the defendant in error did not
commence until he arrived at the funeral home. We
cannot so hold. It seems clear to us that there are
many differences between the case under considera-
tion and what is commonly styled a 'coming and go-

ing case,' where the employee has a fixed time to appear at his employer's place of business. Up to the time the employee reaches such place he is his own master, can choose his route, engage in such private enterprises as he sees fit, take as much time as is consistent with his reaching his place of employment at the stipulated time, start when and from where he chooses, and, after he leaves his place of employment, go where he pleases, with no responsibility to advise his employer of his movements.

"In the instant case it is perfectly apparent that immediately upon receiving the telephone call it became the duty of the employee to go directly to his place of employment as rapidly and directly as he could. His private affairs from the moment that he was advised that he was wanted must be put aside. Any action upon his part inconsistent with such direct and immediate response to his employer's call would have been proper occasion for his discharge."

Since the Court of Appeals in the *Murphy* case affirmed the judgment of the Common Pleas Court (see 32 N. P. [N. S.], 89), we think it proper to refer for a moment to the decision rendered by the trial court on a motion for a new trial, especially in view of the eminent judge who rendered that decision and who now is a member of the first district Court of Appeals, Judge Matthews. The syllabus reads:

"Where an employee is subject to call at all hours, there being thereby an implied agreement that his employment is not to be restricted to the time in which he is at his place of employment, the hazards of the journey from his residence in responding to a call, may be properly regarded as hazards of the service and hence within the purview of the compensation act.

"Plaintiff, a regular employee of an employer complying with the Workmen's Compensation Act, had no

regular hours of work but was under order to report on call from his employer at any time. While on his way from his residence to his place of employment by the shortest route in response to such call, he was struck by an automobile and injured. *Held*: It cannot be said as a matter of law that plaintiff's injury was not occasioned in the course of his employment."

The trial court in the *Murphy case* analyzed those cases in Ohio, which hold that as a rule the "going and coming cases" are not compensable and then called attention to the divergence in facts from which the courts are called upon to determine whether the injury or death had been occasioned in the course of and arose out of the employment. The conclusion is reached that those cases involving injuries received in the zone of employment while going to or returning from the place of employment are not of prime assistance. Neither are those cases where the employee rightfully was in possession of some of his employers personal property at the time of the injury, but, as the court pointed out, they do demonstrate that the end sought in all such cases was the ascertainment of whether the employee's injury had been occasioned in the course of his employment from a hazard of the employment.

In *Industrial Commission* v. *Henry*, 124 Ohio St., 616, 180 N. E., 194, the Supreme Court held that where a decedent had entered upon his employment in the early morning hours and thereafter left the premises of his employer to get his breakfast at a restaurant, in accordance with the custom acquiesced in by the employer, and, while returning to the premises of the employer by a direct and necessary route along a public thoroughfare, was struck by a train so immediately adjacent to the premises of the employer that the only way of ingress and egress was one of hazard, the accident arose out of and in the course of dece-

dent's employment. The court held further that in such case it is not reversible error for the trial court to charge that the jury should take into consideration the nature of the employment, the hours of service required of the decedent, the nature and condition of the premises where the deceased was employed and of the premises surrounding the same, and the natural and ordinary conduct of persons so employed during such hours while acting in such employment. Applying that principle to the facts in the instant case it seems that the conclusion of the trial court should not be disturbed.

In *Kyle* v. *Greene High School, supra,* a case very similar to the instant case, where a janitor of the high school who was subject to call at all hours of the day or night was killed by being struck by an automobile while walking in the street at night on his way to the school house in response to a call from the principal regarding the school lights, it was held by the Supreme Court of Iowa that the injury and death arose out of and in the course of his employment.

In the case of *Sebek* v. *Cleveland Graphite Bronze Co.,* 148 Ohio St., 693, 76 N. E. (2d), 892, the third paragraph of the syllabus reads:

"To be entitled to workmen's compensation, a workman need not necessarily be injured in the actual performance of work for his employer. It is sufficient if he is injured in a pursuit or undertaking consistent with his contract of hire and which in some logical manner pertains to or is incidental to his employment."

Applying this principle to the activities, conditions and environment surrounding the employment and required duties of the decedent, we find that such employment and required duties had a causal connection with

the injury which resulted in his death, and we are, therefore, forced to the conclusion that the same occurred in the course of and arose out of decedent's employment.

Counsel for plaintiff urge that since the record discloses that not only the home in which the decedent lived, but the legal title to the land between the home and the plant of the employer, was vested in the employer and that the state of Ohio, by virtue of condemnation proceedings, has only an easement therein for highway purposes, this case should be affirmed, if for no other reason, on the theory that decedent lost his life while at the situs of his employment.

So far as the decedent in the instant case was forced to travel a certain and definite route between his home and the kilns where the ware was baked, there being no other entrance and no other approach to the entrance afforded him, there is some merit in this latter contention of claimant. It was held in *Industrial Commission* v. *Barber*, 117 Ohio St., 373, 159 N. E., 363, that an employee, who for the purpose of reaching his place of employment travels a course which affords the only unobstructed access thereto, enters upon the course of his employment within the contemplation of the workmen's compensation law when he reaches the zone of such employment which is under the control of his employers, even though such zone be outside the enclosure of his employer. It was held further that the hazards of such zone growing out of the conditions and environment of his employment are hazards of his employment, and an injury received by an employee due to such hazards is compensable out of the industrial insurance fund under the workmen's compensation law. As in that case, the decedent in this case was compelled, under his contract of em-

ployment, to enter or leave the site of the kilns by crossing the highway at a definite place, there being no other unobstructed ingress or egress.

Considering the residence of the decedent, the necessity of being available at all times, his duties and the environment surrounding his forced method of ingress and egress, this court feels that the case of *Kasari* v. *Industrial Commission*, 125 Ohio St., 410, 181 N. E., 809, 82 A. L. R., 1040, and the reasoning therein are applicable here. That case was decided upon the principle, as was the *Barber case, supra*, that the zone of the employment, the place where the accident happened, was under the control of the employer because it afforded the only unobstructed access to the employer's premises. Both the *Kasari* and *Barber cases* are premised upon the fact that the only unobstructed means of ingress and egress is important only as showing that the employee was within the zone of the employment and, therefore, had entered upon the course of his employment. This court does not claim that those cases are final authority for the conclusion in the instant case but does feel that they support the principle that the decedent, Smith, was within the zone of his employment at the time of his injury and death, and that even though the highway was a public thoroughfare, so much thereof as ran through the employer's premises was a necessary adjunct used in connection with its business and, to the degree herein demonstrated, was a part of the employer's premises.

The contract of employment of plaintiff's decedent whether express or implied, and the record substantiates that it was expressed, demanded that at all times he be subject to call regardless of the time of day or night. He had no time which he could claim as his own, whether asleep or awake, and he had no choice in the method, manner, or way of ingress or egress, or

the time in which he reached the kilns. The interest of his employer demanded that he be there when the proper temperature of the baking process was reached. If error was made on the part of the foreman or head man, this might, and did, necessitate numerous trips to and from the kilns before the salting down process could start. At such times the necessity of returning home for sleep and rest was just as imperative as attending the burning, so that later he might return and do the same. Certainly the hazard which resulted in his death was peculiar to the work in which he was engaged and was not common to the general public in the surrounding community.

Under all the circumstances evidenced by the record in this appeal, and the law as this court understands it, it cannot be said as a matter of law that the injury which resulted in decedent's death did not occur in the course of or arise out of his employment.

There is ample evidence to support the finding and judgment of the trial court and, there being no prejudicial error, none of the assignments of error being well taken, the judgment is affirmed.

*Judgment affirmed.*

GILLEN, P. J., and McCURDY, J., concur.