Argued September 7, affirmed October 26, 1960

# MONTGOMERY *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

356 P. 2d 524

*George S. Woodworth,* Assistant Attorney General, Portland, argued the cause for appellant. With him

on the brief were Robert Y. Thornton, Attorney General of the State of Oregon, and Ray H. Lafky, Assistant Attorney General, Salem.

*James B. Griswold*, Portland, argued the cause for respondent. On the brief were Green, Richardson, Green & Griswold, Portland.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and King, Justices.

ROSSMAN, J.

This is an appeal by the defendant, State Industrial Accident Commission from a judgment of the circuit court, based upon findings of fact and conclusions of law, which remanded the plaintiff's claim for compensation to the defendant and ordered it to make an award.

The defendant presents five assignments of error. It argues the second, third, fourth and fifth jointly; therefore, we will state them as one. The first assignment of error submits that the circuit court erred in holding that the defendant commission abused its discretion when it refused to permit the plaintiff to make a tardy filing of his claim. The other four assignments of error contend that the circuit court erred in concluding that an injury which the plaintiff suffered on May 28, 1957, while he was crossing Front avenue in Portland on his way from the plant of Willamette Iron and Steel Company where he worked, constituted "an accidental injury arising out of and in the course of his employment" within the contemplation of ORS 656.202.

We will now state the facts. May 28, 1957, when the plaintiff suffered an injury he was an employee

of Willamette Iron and Steel Company in Portland. The operation is under the Workmen's Compensation Act. Following his injury the plaintiff was hospitalized. No claim was filed with the defendant commission until February 1958. The plaintiff testified that he did not know that he had a claim. The findings of fact entered by the circuit court state:

"That plaintiff had good cause for not filing his original accident claim with the State Industrial Accident Commission within a period of ninety days following the date of his accident, and the State Industrial Accident Commission abused its discretion in refusing to permit the filing of said claim."

The west side of the property of Willamette Iron and Steel Company, to which we will hereafter refer as the company, faces for 1000 feet upon N. W. Front avenue which is 42 feet wide. The plant's easterly boundary is the Willamette River. At the time of the plaintiff's injury the plant had between 1000 and 1200 employees.

Front avenue is heavily traveled and serves heavy industries such as docks, mills and motor freight terminals which face that thoroughfare. Front avenue constitutes the only access to the company's (Willamette Iron and Steel Company) plant. May 28, 1957, at 4:40 p.m., ten minutes after the plaintiff had checked out of the company's time office at the close of his day's work as a welder, he was undertaking to cross Front avenue westerly to a car of a fellow worker which would take the two to their homes and was then struck by a car traveling south. That injury was the inception of this proceeding.

We have stated that N. W. Front avenue constitutes the only means of access to and egress from

the company's premises. The easterly extremity of the thoroughfare (it lays north and south) in the vicinity of the plant lacks a sidewalk in some places and in all places is occupied by parked automobiles that leave no room for a pedestrian. Four gates along Front avenue constitute the entrances to the plant. The company has provided three parking lots within the plant's area for the cars of employees. The largest lot is for those who, like the plaintiff, do mechanical work and the other two are for office personnel. When the number of employees exceeds 1,000, as it did at the time of plaintiff's injury, the employee parking lot is unable to accommodate all, and some are compelled to find space west of Front avenue. Such was the situation faced by the employee with whom the plaintiff rode to work May 28, 1957. He and the plaintiff found a place to park their car west of Front avenue. Those who park there and those who come to the plant upon the bus line or by walking must cross Front avenue on foot.

A few years before the plaintiff's injury the company had persuaded the city of Portland to install a traffic control light at the intersection of Front avenue and Nicolai street. That intersection is near the entrance of the plant which the employees most generally use. A short distance inside that entrance one encounters the employees' parking lot and beyond it is a timekeeper's gate where the workmen check in and out. In order to induce the city to install the the traffic light the company paid half of its cost. The company was given a key whereby it could set the traffic light in operation or discontinue operation. The light was operated upon an established cycle through a control box mounted on a utility pole. One of the employees of the company who was known

as a guard was entrusted with the key and the operation of the light. He operated the signal only in the periods when shifts went on or off duty. Findings, which in our belief are warranted by the evidence, state:

> "* * * at the time of plaintiff's injury his employer was exercising control over Front Avenue, having placed the controlled signal in operation through use of the control box key provided the Company by the City of Portland, and kept in the Company's possession and control; * * *"

It is reasonable to infer that one who undertakes to cross Front avenue on foot in the area affected by the traffic light when the latter starts the automobiles into the street would find a grave hazard in the cars which were competing with him in their movements.

A few minutes before the accident occurred the plaintiff had checked out at the timekeeper's gate which was some distance east of Front avenue. When he was injured he had gone two-thirds of the distance across Front avenue. At that time virtually all traffic had come to a halt upon the signal given by the traffic control light that we have mentioned. While the plaintiff was making his way between two standing cars he was struck by a third car which was in motion. According to findings which we adopt:

> "* * * plaintiff had used the usual and customary exit after having checked out at the timekeeper's gate where he was expected to check out and was using the shortest and most direct route from the company's parking lot exit to the place where the vehicle in which he rode was parked * * *."

> "It is further found as a matter of fact that all employees working at the Company's plant were

required either to cross Front Avenue by foot or auto or travel along Front Avenue and into the entrances to the parking areas, and that the employment resulted in the company's employees being exposed to the hazards of Front Street to a greater degree than was the common public, and the crossing of Front Street at the place where plaintiff was injured was a special risk of his employment, Front Avenue being the sole means of ingress and egress to the Company's premises, and further that Front Avenue was in fact at the time of plaintiff's injury an extension of the Company's plant."

■ The first assignment of error presents the issue as to whether or not the circuit court was justified in holding that the commission was not warranted in rejecting the plaintiff's claim on the grounds of tardy presentation. ORS 656.274 requires claims of this kind to be "filed within three months of the date upon which the accident occurred" but it provides, "the commission may, in its discretion, upon a sufficient showing being made, permit the filing of a claim in a nonfatal case within one year of the time the accident occurred." In declining to award the plaintiff compensation the commission ruled:

"There is insufficient evidence that said workman sustained accidental personal injury within the meaning of the provisions of the Oregon Workmen's Compensation Law."

Thus, the claim was rejected upon a holding that it lacked merit. The answer filed in the circuit court did not aver late filing.

In *Kehoe v. Industrial Accident Commission*, 214 Or 629, 332 P2d 91, Mr. Justice PERRY, on behalf of the court, stated:

"In this case there can be no question but that the Commission actually permitted a late filing

of the claim, for the claim itself shows the date of the accidental injury, the date of presentment to the Commission, and the Commission's rejection on the sole ground that plaintiff failed to produce sufficient evidence that the injury arose in the course of his employment by reason of an accident caused by violent or external means.

\*　　\*　　\*

"In the present case we find no rejection because of the late filing until after the Commission had acted upon the claim and rejected it upon the merits."

The same observation is warranted in this case. The first assignment of error lacks merit.

We will now consider the second, third, fourth and fifth assignments of error. It will be noticed from what has been said that in order to reach his place of employment the plaintiff and others who could not find a place in the company's parking lot were compelled to cross N. W. Front avenue at least twice daily. So also were employees who came on foot or on the bus lines. It seems fair to believe that Front avenue presented substantially more hazards to those who undertook to cross it than did the ordinary city street. Its dangers emanate not only from the volume of traffic that resorts to it but also from the character of the traffic. The company, in recognizing the danger to its employees from the traffic at the employees' gate, persuaded the city to install in front of the gate the traffic control light which we have described. Moreover, it gained the right to operate the light itself from which fact it seems permissible to infer that its workmen were peculiarly subject to the traffic's danger.

It will be recalled that the trial judge's findings,

in addition to stating that the company's employees, such as the plaintiff, were "exposed to the hazards of Front avenue to a greater degree than was the common public," added that "Front avenue was in fact at the time of plaintiff's injury an extrusion of the company's plant." The finding found its justification in the fact that the area of Front avenue immediately adjacent to the main employee entrance was used by virtually all the employees, and movement in it was subject to the company-operated traffic light.

██ Generally, if an employee after the completion of his day's work enters upon the public thoroughfare on his way home and in so doing thereby chooses his own means of travel and route, he is entitled to no compensation out of an industrial accident fund if he meets with an injury. Before any workman is entitled to compensation for an injury he must establish that it arose out of and in the course of his employment. In the hypothetical case to which we just resorted work had stopped for the day, the men had departed from the plant, and the workman who met with the mishap was doing nothing for his employer. In cases of injury suffered while going to or from work the employee generally is unable to show that at the time of his injury (1) he was doing something for his employer, (2) his employer was exercising control over him or the place of the mishap, or (3) his injury, although it befell him in a public thoroughfare, came from a source to which he was exposed to an extent substantially greater than the general public. Since the industrial accident fund is not an altruistic means for the redress of those who meet with common accidents, a claimant must show that his injury arose out of and in the course of his employment.

■ The plaintiff recognizes all of the foregoing and accordingly established, as the trial judge found, that (1) the plaintiff's employer "was exercising control over" the part of N. W. Front avenue adjacent to the employee gate; (2) "all employees working at the Company's plant were required either to cross Front Avenue by foot or auto \* \* \*"; (3) the employment resulted in the company's employees being exposed to the hazards of Front avenue to a greater degree than was the common public; (4) "the crossing of Front avenue \* \* \* was a special risk of his employment"; and (5) "Front Avenue was in fact \* \* \* an extrusion of the Company's plant."

■ Beginning with *Cudahy Packing Co. v. Parramore,* 263 U S 418, 682 L Ed 369, 44 S Ct 153, 30 ALR 532, the courts have displayed a willingness to recognize that the hazards of the journey to and from the place of employment may be hazards of the service which the employee performs. The holding in the Parramore decision, as stated by this court in *Lamm v. Silver Falls Timber Company,* 133 Or 468, 277 P 91, 286 P 527, 291 P 375, follows:

"In *Cudahy Packing Co. v. Parramore,* supra, the plaintiff was in the employ of the packing company and sustained an injury while on the public streets on his way to work. The Utah compensation act provided for payment of compensation for personal injury suffered by employees 'by accident arising out of or in the course of his employment.' The packing plant was located about six miles north of Salt Lake City; its employees generally resided in that city. In going to and from the plant the workmen proceeded along the main highway running north and south and passing the plant at a distance of one-half mile to the east. From this point a public road runs west to and beyond the plant, crossed, before reaching the plant,

by three lines of railroad. The only practical way of ingress and egress for employees was along this road and across these railway tracks; this was the way constantly used. The plaintiff lived in Salt Lake City. On the morning of his injury he rode to the plant in the automobile of another employee for the purpose of going to work. The automobile crossed over two of the railway tracks, and, when upon the third, was struck by an engine and the plaintiff was killed. This happened about seven minutes before the time when the plaintiff would have begun his work. The industrial commission of Utah awarded compensation; the Supreme Court of Utah affirmed the award, and the latter was upheld and affirmed by the federal supreme court."

In view of the fact that our statement in the above review that Parramore met with death on a public thoroughfare has been criticized we read the decision again. Its text states:

"In going to and from the plant the workmen proceeded along a main highway running north and south and passing the plant at a distance of about half a mile east. From this point a public road runs west to and beyond the plant, crossed, before reaching the plant, by three lines of railroad * * * *"

Thus, the fatality occurred upon a "public road."

In *Bountiful Brick Co. v. Giles,* 276 U S 154, 72 L Ed 507, 48 S Ct 221, the workman had left the plant not by the exit preferred by the employer, but by another which required him to cross railroad tracks and thereby expose himself to the dangers of the railroad trains. Thus, in that case, unlike as in the Parramore case, the workman had a choice of routes. When he met with death compensation was payable, so the decision held.

In the Parramore decision the court reasoned in this way:

"*   *   * And this is not to impose liability upon one person for an injury sustained by another with which the former has no connection; but it is to say, that it is enough if there be a causal connection between the injury and the business in which he employs the latter  *   *   *. The fact that the accident happens upon a public road or at a railroad crossing, and that the danger is one to which the general public is likewise exposed, is not conclusive against the existence of such causal relationship, if the danger be one to which the employee, by reason of and in connection with his employment, is subjected peculiarly or to an abnormal degree.

*          *          *

"Here the location of the plant was at a place so situated as to make the customary and only practicable way of immediate ingress and egress one of hazard.  Parramore could not, at the point of the accident, select his way.  He had no other choice than to go over the railway tracks in order to get to his work; and he was in effect invited by his employer to do so.  *   *   *

"*   *   * The employment contemplated his entry upon and departure from the premises as much as it contemplated his working there  *   *   *."

The essential facts in the Parramore case are not materially different from those of the case at bar. In the Parramore case, as in this one, the accident occurred upon a public thoroughfare in front of the plant where the men worked.  It is true that in the Parramore case the source of danger was the trains which operated across the road which the workmen were required to travel upon in going to and from the place of their employment.  In the case at bar the source of danger was the vehicles which ran up

and down the street the plaintiff was required to cross. The trains in the Parramore case ran upon a fixed rail, but motor vehicles in their movement are not restrained by rails. We do not believe that it would be reasonable to rule that although a railroad train is a source of hazard to those who must cross its tracks a motor truck, although it not infrequently runs in a squadron-like formation with other vehicles, is not a source of hazard.

We likewise do not deem it important whether the thoroughfare which the employee is required to travel in order to reach the plant is a public one or private: *Jaynes v. Potlatch Forests, Inc.*, 75 Idaho 297, 271 P2d 1016, 50 ALR2d 356.

■ *Lamm v. Silver Falls Timber Co.*, supra, and its companion case, *Varrelman v. Flora Logging Co.*, 133 Or 541, 277 P 97, 286 P 541, 290 P 751, followed the Parramore decision and adopted its rationale. The Lamm and Varrelman decisions held that employees of logging concerns who were injured while riding upon their employer's logging railroads on their way to their respective logging camps so that they could resume their work the following morning were entitled to compensation out of the industrial accident fund. The logging railroads were the only practical means whereby the men could go to and from the logging camps. Each, while riding upon his logging train, was within the zone of the hazards inherent in his occupation as a logger. Both decisions, like the Parramore and Bountiful Brick opinions, held that the injuries arose out of and in the course of the employment. However, in the Lamm and Varrelman cases the accidents happened while the workmen were upon premises owned by the employers and while they were riding in conveyances operated by the employers. Al-

though the Lamm and Varrelman cases embraced the reasoning of the Parramore decision, the case now before us finds its parallel in the Parramore case rather than in the Lamm and Varrelman cases.

The Lamm opinion, in analyzing the decisions of the courts, said:

"* * * Generally an injury to the employee is regarded as one arising out of and in the course of the employment when it was sustained upon a road or other way leading to the plant which the contract of employment contemplated the workmen should use in going to and from their places of employment; that the road is a public one is immaterial provided the demands of the employment exposed the injured man to the hazards in a greater degree than the common public * * *."

The words "contract of employment" were inadvisedly selected. When only one approach to a plant is available or practical the decisions generally state that the employer invites the employee to use that approach.

We think that there must also be added to the language just quoted from the Lamm opinion a requirement that use of the public thoroughfare exposes the workman, as in the Parramore case, to the hazards of the road in a degree greater than the general public. In the Parramore case the extra hazard consisted of the danger of passing daily over the several lines of railroad track. In the Lamm and Varrelman cases the hazards consisted of riding upon logging railroads. In *Jaynes v. Potlatch Forests, Inc.,* 75 Idaho 297, 271 P2d 1016, 50 ALR2d 356, the court said:

"It will be noted in most jurisdictions an exception to the general rule has extended the principle to embrace an accident as arising out of and in

the course of employment when it occurs at a point where the employee is within range of dangers peculiarly associated with the employment. In this respect it is reasoned that such injury can be seen to have followed as a natural incident to the work and as the result of peculiar exposure occasioned by the nature of the employment because the causative danger is peculiar to the employment and not common to the neighborhood. Under this rule it is not intended to nor does it protect an employee against all the hazards, perils and dangers on his journey from home to work and from work back to his home."

As thus restated we believe that the quotation from the Lamm decision states the principle of law that governs this case. The following decisions support our view: *Industrial Commission of Ohio v. Barber,* 117 Ohio St 373, 159 NE 363; *Naranja Rock Co. v. Dawal* (Fla.) 74 So2d 282; *Freire v. Matson Navigation Co.,* 19 Cal 2d 12, 118 P2d 809; *Pacific Indemnity Company v. Industrial Accident Comm.,* 28 Cal 2d 329, 170 P2d 18; *Smith v. Industrial Commission of Ohio,* 90 Ohio App 481, 107 NE2d 220.

We have found no merit in the assignments of error. The challenged judgment is affirmed.