Argued June 23, affirmed August 12, 1971

BARKER, *Appellant, v.* WAGNER MINING
EQUIPMENT, INC., *Respondent.*

487 P2d 1162

*Dan O'Leary,* Portland, argued the cause for appellant. With him on the brief were Pozzi, Wilson & Atchison, Portland.

*Stephen R. Frank,* Portland, argued the cause for respondent. With him on the brief were Edwin J. Peterson, and Tooze, Powers, Kerr, Tooze & Peterson, Portland.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

Claimant appeals from adverse rulings on his claim for compensation for injuries received in an off-the-premises accident, which he claims arose "out of and in the course of employment." ORS 656.002(6).

Claimant was employed in defendant's factory on the swing shift—4:30 p.m. to 12:30 a.m. The union contract which set the hours and pay for the claimant required him to work for seven and one-half hours per shift for which he was paid a sum equivalent to "eight (8) times the regular hourly day rate, plus fifteen (15) cents per hour." The day shift worked eight hours for eight hours' pay. The contract also specified that the employe had 30 minutes "for meals on the employee's time." During this 30-minute lunch break, claimant regularly drove to his home located some distance away. The most direct route to his home required the crossing of a railroad track about one-third of a mile from the employer's plant. The rail-

road crossing did not serve the employer's plant and the employer had no control over it. It was at this crossing during a lunch-hour trip that the accident and injury occurred.

■ Claimant asserts that the payment for the full eight hours when he only worked seven and one-half hours made the lunch half-hour paid time, thus making this travel "in the course of employment." *Livingston v. State Ind. Acc. Com.,* 200 Or 468, 473, 266 P2d 684 (1954). With this assertion we cannot agree. The contract specifically provided that meals were on the employe's time. The extra one-half hour of pay, like the 15 cents per hour, was added compensation for working the swing shift rather than the day shift. No other reasonable interpretation can be placed upon the contract.

■ Claimant further asserts that the railroad crossing presented him with a "special risk" which entitles him to compensation under the doctrine announced in *Cudahy Co. v. Parramore,* 263 US 418, 44 S Ct 153, 63 L Ed 366, 30 ALR 532 (1923), and followed by the Oregon Supreme Court in *Montgomery v. State Ind. Acc. Com.,* 224 Or 380, 356 P2d 524 (1960). In *Cudahy* an accident which occurred at a railroad crossing adjacent to the employer's plant which all employes had to cross to get to their employment was viewed as having arisen "out of and in the course of employment." The railroad crossing served the employer's plant and was partially under the employer's control. The same result was reached in *Montgomery,* where the injury occurred on a street adjacent to the employer's plant which all employes had to enter in order to reach their employment. The employer exercised control over this street area at the time of

the accident. Similar characteristics of proximity to the place of employment, employer control, and necessity of use were present in *Willis v. State Acc. Ins. Fund*, 3 Or App 565, 475 P2d 986 (1970).

The instant case is factually distinguishable from the above cases in that the railroad crossing was substantially removed from the employer's premises; there was no employer control; and the railroad tracks did not serve the employer's plant. Claimant could go where he pleased for lunch and use any route he wished. It cannot be said that his employment subjected him to any more hazard than the general public encounters when using the crossing.

The instant case fails to meet the tests mentioned in *Jordan v. Western Electric*, 1 Or App 441, 463 P2d 598 (1970), in the following particulars: (1) the activity was not clearly for the benefit of the employer as well as the employe; (2) the activity (using this railroad crossing) was not contemplated by the employer and employe; (3) the employe was not paid for the activity; (4) the activity was not on the employer's premises or premises over which employer exercised some control. As in *White v. S.I.A.C.*, 236 Or 444, 389 P2d 310 (1964), this is a going-home-to-lunch situation, and it poses no "special risk" of the employment.

Affirmed.