Argued and submitted July 18, affirmed December 19, 1984

In the Matter of the Compensation
of Zona F. Malinen, Claimant.

## MONTGOMERY WARD & COMPANY,
*Petitioner,*

*v.*

## MALINEN,
*Respondent.*

(82-03216, 82-02253; CA A30679)

692 P2d 694

J. P. Graff, Portland, argued the cause for petitioner. With him on the brief were Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

D. Richard Fischer, Astoria, argued the cause for respondent. With him on the brief were Larson & Fischer, Astoria, Hayes Patrick Lavis, Astoria, and Roll, Westmoreland & Lavis, P. C., Astoria.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

### WARDEN, J.

Employer appeals from an order of the Workers' Compensation Board affirming the referee's decision that claimant's injury is compensable. We affirm.

Claimant is a 57-year-old woman. On January 6, 1982, she slipped on an ice-covered sidewalk which ran in front of employer's Astoria catalog store and its adjacent parking lot. The fall seriously injured her right leg. At the time of the accident, she was a freight clerk in the store and had been so employed since 1969. Her duties included work at the counter.

Claimant had learned on the evening of January 5, after leaving work, that she was to report for jury duty the next morning. She reported to work at 7:30 a.m. and, when the manager arrived, told her that she would have to leave later that morning for jury duty. Two others of the store's five employes were off work, and the manager said, "Well, that's going to leave us shorthanded." Claimant left the store at about 9:15 and walked to the courthouse three blocks away. The court recessed at noon, and claimant was instructed to return at 1:30 p.m.

Claimant testified that she left the courthouse and started to walk back to employer's store to "relieve one of the girls at the store." The referee concluded, on the basis of claimant's testimony, her work history and his own assessment of her credibility, that her primary reason for returning to the store was to work. Snow had fallen the day before, and the sidewalks were slick and icy. Claimant fell on the public sidewalk next to employer's parking lot, about 50 feet short of the store's front entrance.

Access to employer's store was from the public sidewalk. Although the store had a rear entrance that claimant could have reached by crossing the parking lot, the parking lot was even more hazardous than the sidewalk at the time. The Astoria City Code required that employer keep the sidewalk where claimant fell clear of snow and ice, and it was employer's policy to do so. Indeed, on the day before the accident, another employe had cleared the sidewalk of snow and ice without being told to do so by the manager.

The referee based his conclusion that claimant's

injury was compensable primarily on the fact that she was returning from jury duty:

> "Considering the importance of citizen's serving on jury duty and the protection provided for the service, it follows that workers, such as claimant, might very well travel from work to jury service and back to work, in order to maintain both the performance of industrial enterprises and the jury system, rather than traveling to and from jury duty directly from home, thereby being exposed to a risk attendant to employment and one to which they would not ordinarily be exposed. Claimant was not just going or coming to work or going or coming to lunch as she might regularly do, but in a very real sense this particular mission was dictated by unique work concerns."

We do not need to consider whether, as a general proposition, persons injured while traveling between work and jury duty should be deemed to have "sustained an accidental injury arising out of and in the course of employment." ORS 656.005(8)(a). It makes no difference that claimant had been performing a civic duty or that she was coming to work instead of leaving from it. What is controlling is that she was coming to work by the only practicable route across an area that was subject to her employer's control. This case falls within the rules laid down in *Montgomery v. State Ind. Acc. Com.*, 224 Or 380, 356 P2d 524 (1960); *Montgomery Ward v. Cutter*, 64 Or App 759, 669 P2d 1181 (1983); and *Willis v. State Acc. Ins. Fund*, 3 Or App 565, 475 P2d 986 (1970).

In *Montgomery,* the Supreme Court held that an employe was entitled to compensation when he was struck by a car while crossing a public street on his way from work. The employer provided parking lots for employes so they would not have to cross the street, but the lots were full on the day in question. The court found that the heavily traveled street which claimant was forced to cross was the only way to and from the plant and that employes were exposed more than the general public to its hazards. The employer exercised a certain amount of control over traffic and pedestrians using or crossing the street, because it had influenced the city to install a traffic signal in front of its gate, which it could set in operation by use of a key.

In *Willis,* a university professor slipped and fell as he crossed a city-owned park on his way to his office from his car.

Students and staff of the university used the park to such an extent that the university had assumed substantial responsibility for its upkeep. We held the injury compensable because of the extent and nature of the control which the employer exercised over the park and because employes of the university were more exposed to the risk of injury while crossing the park than were members of the general public.

The claimant in *Cutter* worked for a store located in a shopping mall. She fell while returning to work after doing a personal errand during her lunch hour. She had parked her car in a portion of the mall parking lot where the mall operator required the store's employes to park. She was walking directly to the store when she stepped in a hole in the parking lot. The employer could have required the mall operator to repair the hole under the terms of its lease with the mall owners. We held the injury compensable, because the portion of the parking lot where the injury occurred was sufficiently within the employer's control to be treated as a part of its premises.

Employer's attempts to distinguish these cases are unpersuasive. It exercised as much control over the area where claimant fell as the employers exercised in *Montgomery, Willis* and *Cutter.* Indeed, employer had a legal duty to control the buildup of ice and snow on the sidewalk, whereas the employers in the cases mentioned above merely assumed partial control or were entitled to it.

Employer argues that it did not "regularly [exercise] such control of the sidewalk where claimant fell as to make it an adjunct of the store or a part of its premises" in part because, if the injury had taken place during the summer, no court "would conclude that the injury had arisen out of claimant's employment or was otherwise work related just from the fact that [employer] regularly removed snow and ice from the sidewalk during winter." In *Montgomery, Willis* and *Cutter,* however, each employer had the right to exercise partial control over the premises at the time the accidents took place. Year-round control was not material in those cases. Its absence is not material here.

Affirmed.