Ralph McGRATH and Don
Mohr, Appellants,

v.

UNIVERSITY OF ALASKA, Appellee.

No. S–3418.

Supreme Court of Alaska.

June 21, 1991.

Robert A. Royce, Jermain, Dunnagan & Owens, Anchorage for appellants.

Thomas P. Owens, Jr. and C. Ann Courtney, Owens & Turner, P.C., Anchorage, William R. Kauffman, Fairbanks, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

## I. FACTS AND PROCEEDINGS

The University of Alaska ("University") is a statewide institution which operates both four-year universities and community colleges. In 1987, the University undertook a system-wide restructuring and eliminated the separate administration of the community colleges. Previously, the faculty at the community colleges had been represented by the Alaska Community Colleges' Federation of Teachers, Local 2404, and covered by a collective bargaining agreement. This agreement had no rank or tenure provisions. After the restructuring, the community colleges' faculty was offered an opportunity to transfer to the combined faculty of the University of Alaska. In the combined faculty, the community college faculty would not have union representation and the employees would be subject to the same rank and tenure system as their colleagues at the University of Alaska.

All members of the community colleges' faculty were offered an opportunity to transfer to the combined faculty, and all but one accepted. The University's Board of Regents adopted a policy "to provide the guidelines for faculty appointment, tenure, academic ranks, and salary for faculty in the transition." The policy provided that former full-time community college faculty with seven full years of service were eligible to receive tenure; those with four to six years were eligible to receive two-year contracts; and those with fewer years of service were eligible to receive one-year contracts. No former community college faculty member was offered a full-professorship; the highest rank offered was associate professor.

Many community college faculty members were dissatisfied with their rank and tenure assignments. Associate Professor Don Mohr, as a representative of the com-

munity colleges' faculty union, filed an informal grievance on behalf of faculty members who claimed that they were wrongly denied tenure. Similarly, Associate Professor Ralph McGrath requested a change in the rank assignments. Thereafter, the two professors filed a formal grievance on behalf of themselves and seventy-three other former community college faculty members.

At the time Mohr and McGrath filed their initial complaints, the University of Alaska's administration had not yet established grievance procedures for the newly integrated institution. The Anchorage campus chancellor adopted an interim grievance procedure, which mirrored the procedures previously used by the Anchorage campus. The chancellor then appointed an interim grievance council ("council") to implement the interim procedures.

The council conducted a preliminary investigation and determined that a grievance hearing should proceed. Additionally, the council recommended that the University hold this formal grievance hearing in accordance with the provisions of Alaska's Administrative Procedure Act ("APA"), AS 44.62.330–.650.

However, the president of the University rejected the council's recommendation that the grievance be processed in accordance with the APA. Instead, it was determined that the grievance would be processed under the Board of Regents' Policy, see 04.-04.01 (June 4, 1987), and the interim grievance procedures. Under the Board of Regents' policy, the council was required to recommend dismissal or hold a hearing on the grievance within thirty days of its filing, and then forward a recommendation to the chancellor for decision. The chancellor's decision was then appealable to the president.

The council notified McGrath and Mohr that it was ready to go forward with the hearing and that procedures would not be governed by the APA. Rather than proceeding with the hearing before the council, McGrath and Mohr then filed a complaint in superior court, seeking a declaratory judgment and mandatory injunction to require the University to conduct the grievance hearing under the APA. They contended that the APA procedures were required and that the contemplated grievance procedures denied them due process.

Thereafter, the plaintiffs and the University filed motions for summary judgment. The superior court held that the APA did not apply to the grievance proceedings in the instant case.[1]

## II. DISCUSSION

A. *Do the provisions of the APA govern the grievance proceedings in this case?*

Article 8 of the APA deals with administrative adjudication. AS 44.62.330(a) provides, in part, that "[t]he procedure of the state boards, commissions, and officers listed in this subsection ... shall be conducted under AS 44.62.330–44.62.630. This procedure, including, but not limited to ... conduct of hearings ... shall be governed by this chapter...." AS 44.62.330(a)(45) lists the University of Alaska as a covered entity, with the proviso "except to the extent that its inclusion is inconsistent with the provisions of AS 14.40."

McGrath and Mohr argue that AS 44.62.-330(a)(45) mandates that their grievances be processed in accordance with procedures called for by the APA. The University advances numerous arguments in support of the superior court's grant of summary judgment and its holding that the APA is inapplicable to the proceedings in question.[2]

---

1. Summary judgment was granted in this case on the basis of stipulated facts and exhibits. *De novo* review is the applicable standard of review on an appeal from a grant of summary judgment. *Kollodge v. State,* 757 P.2d 1028, 1032 (Alaska 1988). There is no genuine issue of material fact; rather, this appeal concerns statutory interpretation, which involves our own independent judgment. *Waller v. Richardson,* 757 P.2d 1036, 1039 n. 4 (Alaska 1988).

2. The University emphasizes that the superior court reasoned, in part, as follows in reaching its decision:

   (1) AS 44.62.330(a)(45) requires the University to comply with the procedural require-

More particularly, the University contends that the legislative history of AS 44.62.-330(a) demonstrates that the legislature never intended to interfere with the Board of Regents' independent power to manage and govern the internal affairs of the University; that the University's grievance procedures are reasonable; that application of the APA to the University's grievance proceedings would be inconsistent with AS 14.40; that the APA by its very nature does not apply in the circumstances of this case; that grievance procedures are not "procedures" within AS 44.62.330; that the APA only applies to "adjudicative facts" not to "legislative facts;" and that the statutory framework governing personnel matters for state agencies and other public employees shows that the APA does not apply to the University's grievance procedures.

We have reviewed all of the University's contentions listed above and conclude that they should be rejected. Therefore, the APA's procedures must govern any grievance hearings in the case at bar.

(i) Applicability of the APA

■ As noted at the outset, AS 44.62.-330–.630 governs the adjudicative procedures of the University "except to the extent that its inclusion is inconsistent with the provisions of AS 14.40." AS 44.62.-330(a)(45). The University notes that under AS 14.40.170(b)(1), the Board of Regents may "adopt reasonable rules, orders and plans ... for the good government of the university...." The University then argues that since its rules governing grievance procedures are reasonable, an application of the APA procedures to its grievance proceedings would be inconsistent with the authority of the Board to manage the Uni-

versity. More specifically, the University contends that the APA procedures are inconsistent with AS 14.40 because they are more extensive and costly than its own reasonable grievance procedures, and therefore they are precluded under AS 44.-62.330(a)(45).

We think these contentions are adequately and correctly answered by Judge Serdahely's opinion *Aden v. University of Alaska*, No. 3AN–85–17179 Civil (Alaska Super., Feb. 2, 1987). In rejecting contentions similar to those advanced by the University in the instant case, Judge Serdahely held the following:

> The Court concludes that AS 44.62.330 *et seq.* does apply to Defendant University of Alaska and that Defendant's grievance proceedings must comply with the provisions of such Act.

> In so ruling, the Court notes that on its face, the APA applies to Defendant University of Alaska. AS 44.62.330(45) [sic] expressly provides that the provisions of the Act apply to the "University of Alaska, except to the extent that its inclusion is inconsistent with the provisions of AS 14.40." Having reviewed the provisions of AS 14.40, particularly including the powers and duties of the University President as defined in AS 14.40.-210–.220, the Court concludes that there is nothing inconsistent between such provisions and the APA. Clearly, the President's power to appoint professors and assistants, and to define and supervise the duties of such persons, are not inconsistent with the APA hearing procedure which is designed to guarantee due process to persons adversely affected by administrative action, such as adverse employment or personnel action.

ments of the APA "except to the extent that [the APA's] inclusion is inconsistent with the provisions of AS 14.40;" (2) AS 14.40 specifically authorizes the Board to "adopt reasonable rules, orders and plans ... for the good government of the University;" (3) the Alaska Legislature did not intend the University to be required by law to conduct the APA grievance procedures if the University were to adopt valid, adequate, and fair grievance procedures of its own; (4) under AS 14.40.170(b)(1),

grievance procedures adopted by the Board need only be "reasonable," and the procedures instituted by the University meet this test of reasonableness; and (5) to the extent that the APA would require the University to hold substantially more extensive, time consuming, and expensive procedures than would be required under the validly adopted and reasonable University grievance procedures, application of the APA would be inconsistent with AS 14.40.170(b)(1).

**(ii) Does the APA govern intra-agency adjudications, such as employee grievance hearings?**

Three arguments advanced by the University of Alaska converge here. The University contends that the statutory framework governing personnel matters for state agencies and public employees shows that the APA does not apply to University grievance proceedings; that grievance procedures are not procedures within AS 44.-62.330; and that the APA applies only to adjudicative facts, not legislative facts.

The University correctly observes that the State Personnel Act, AS 39.25.010–.220, "governs personnel matters for all state employees in non-exempt service positions." AS 39.25.090. Neither those state employees in non-exempt service positions nor state employees covered by the Public Employment Relations Act ("PERA"), AS 23.40.070–.260, are covered by the APA procedures when grievance proceedings are implicated.[3] Therefore, the University concludes that the "the Legislature intended University employees to have only the same rights as state and other public employees in personnel matters...."

University employees, however, are exempt from the State Personnel Act. AS 39.25.110(5). Thus, they do not receive the protection of grievance rules promulgated by the Director of Personnel under AS 39.25.150(16). Consequently, the exclusion of other state personnel from the APA does not, in our view, conclusively demonstrate that University personnel should be similarly excluded.

The University relies on two statutes in support of its argument that intra-agency grievance proceedings are not the type of proceedings meant to be included within AS 44.62.330. First, the APA's definition of "regulation" excludes anything which "relates only to the internal management of a state agency." AS 44.62.640(a)(3). Second, the State Personnel Act establishes procedures for amendment of personnel rules affecting non-exempt state employees. AS 39.25.140. Subsection (e) of this section states, "[t]he rules adopted under this chapter relate to the internal management of state agencies and their adoption is not subject to the Administrative Procedure Act." While the State Personnel Act does not apply to University employees, the University argues, by analogy, that a blanket legislative intent exists not to have the APA apply to employment matters.

We believe these arguments are fundamentally flawed. Both statutes refer to the application of the APA to an agency's rulemaking authority, i.e. the adoption of rules. Neither statute applies to an agency's adjudicatory functions. If adjudication and rulemaking were coextensive, these statutes would be controlling here. However, the two functions differ significantly. Rulemaking procedures are designed to ensure a fair and open adoption of policy; adjudication procedures are intended to ensure a fair application of policy to parties.[4] Thus, the fact that rulemaking procedures do not apply to internal personnel rules does not indicate that the protections of the APA's adjudicatory procedures

---

**3.** The personnel division of the Department of Administration administers the State Personnel Act. AS 39.25.030. The labor relations agency administers PERA. AS 23.40.090; AS 23.40.170. Neither of these agencies are enumerated under the APA. AS 44.62.330(a). However, hearings conducted pursuant to either of these statutes contain considerable procedural protections. *See* AS 39.25.170–.176; 2 AAC 10.400–.440. PERA applies to the University when the University has a collective bargaining agreement. *See Alaska Community Colleges' Fed'n of Teachers v. University of Alaska,* 669 P.2d 1299 (Alaska 1983). Hearings conducted under that agreement would be conducted pursuant to 2 AAC 10.400–.440. The University concludes that where no collective bargaining agreement ex-

ists, hearings should be conducted pursuant to internal policy. We think a more logical conclusion is that where no collective bargaining agreement exists, hearings should be conducted pursuant to the APA.

**4.** *See Wickersham v. State, Commercial Fisheries Entry Comm'n,* 680 P.2d 1135, 1139, 1143–44 (Alaska 1984). *See also* R. Cass & C. Diver, *Administrative Law* 325 (1987) ("There is no doubt, however, that the procedures requisite for decisions addressing many members of an affected class on grounds generally applicable classwide are minimal in comparison to the procedures constitutionally required for individualized determinations.").

are inapplicable to individual personnel decisions.

The APA outlines the manner in which a hearing "to determine whether a right, authority, license or privilege should be revoked, suspended, limited, or conditioned" is initiated. AS 44.62.360. It similarly informs as to how a hearing "to determine whether a right, authority, license or privilege should be granted, issued or renewed" is initiated. AS 44.62.370. From these provisions, the University concludes that the APA only covers hearings which concern rights, authorities, licenses, and privileges, and that this does not include "intra-agency personnel matters." In support of this argument, the University cites cases from other jurisdictions, holding that their respective administrative procedure acts are inapplicable to agency personnel decisions.[5]

The University further contends that the APA adjudication procedures are inapplicable because McGrath is not grieving "adju-dicative facts," but rather "legislative facts." As one court explained, "agencies employ rulemaking procedures to resolve broad policy questions affecting many parties and turning on issues of 'legislative fact.' Adjudicatory hearing procedures are used in individual cases where the outcome is dependent on the resolution of particular 'adjudicative facts.'" *Independent Bankers Ass'n of Georgia v. Board of Governors of Fed. Reserve Sys.*, 516 F.2d 1206, 1215 (D.C.Cir.1975).[6]

The limitation of administrative adjudicatory hearings to adjudicatory facts is not made explicit in the APA.[7] Nevertheless, the distinction has been recognized. *See Wickersham v. State, Commercial Fisheries Entry Comm'n*, 680 P.2d 1135, 1143–47 (Alaska 1984) (refusing to apply the more relaxed public notice requirements of rulemaking procedures to adjudicatory procedures which involve individual rights). The structure of the APA, which establishes separate procedures for rulemaking and

---

**5.** In *Abramson v. Board of Regents, Univ. of Hawaii*, 548 P.2d 253 (Hawaii 1976), the plaintiff who was denied tenure and sued asserted, in part, a denial of her rights under the Hawaii APA. *Id.* at 255. This portion of her claim was rejected because the coverage of that act was limited to " 'a proceeding in which the legal rights, duties or privileges of specific parties are required by law to be determined after an opportunity for agency hearing.' " *Id.* at 263. *Accord Klein v. State Bd. of Educ.*, 547 So.2d 549, 551–52 (Ala.Civ.App.1988), *cert. quashed by Ex parte Klein* 547 So.2d 554 (Ala.1989). However, Alaska's APA has no such limitation. Therefore, this authority is not on point here.

The University of Alaska interprets *McCarrey v. Commissioner of Natural Resources*, 526 P.2d 1353 (Alaska 1974), as holding that "the APA applies only where a particular agency statute provides for a hearing and adjudication." This, however, overstates the holding. The APA's adjudicatory chapter only includes the "Division of Lands under Alaska Land Act *where applicable.*" AS 44.62.330(a)(9) (emphasis added). The land act gave the commissioner discretion to terminate grazing leases; hence, we held that application of the APA was not required. *McCarrey*, 526 P.2d at 1356. Where not similarly limited, however, the APA would apply across the board. *McCarrey* quotes from the federal APA, which, like the Hawaii APA, is limited to cases where "adjudication [is] required by statute to be determined on the record after opportunity for an agency hearing." 526 P.2d at 1356 n. 17 (quoting 5 U.S.C.A. § 554 (1967)). Alaska's APA as it applies to the University has no such limitation;

indeed, it specifically applies "notwithstanding similar provisions in the statutes dealing with the state boards, commissions, and officers listed." AS 44.62.330(a). Thus, the fact that the adjudicatory provisions of the APA do not apply to termination of a grazing lease does not dictate that they are inapplicable to University of Alaska grievance procedures.

**6.** In *Independent Bankers*, the United States Court of Appeals for the District of Columbia Circuit adopted the following distinction:

Adjudicative facts are the facts about the parties and their activities, businesses, and properties. Adjudicative facts usually answer the questions of who did what, where, when, how, why, with what motive or intent; adjudicative facts are roughly the kind of facts that go to a jury in a jury case. Legislative facts do not usually concern the immediate parties but are general facts which help the tribunal decide questions of law and policy and discretion.

516 F.2d at 1215 n. 26 (quoting 1 K. Davis, *Administrative Law Treatise* § 7.02 at 413 (1958)).

**7.** *Cf.* California Code, Government Code §§ 11000–11529 at § 11500(f) (West 1980), which defines "adjudicatory hearing" to mean "a state agency hearing which involves the personal or property rights of an individual, the granting or revocation of an individual's license, or the resolution of an issue pertaining to an individual...."

adjudications, suggests that Alaska has implicitly limited adjudicative functions to adjudicatory facts and rulemaking functions to legislative facts. *Compare* AS 44.62.-010-.320 *with* AS 44.62.330-.630. *See also* AS 44.62.640(a)(3) (defining regulation). Further, the distinction is one which must be made in order to determine whether an administrative entity has made an adjudicatory decision for purposes of Appellate Rule 602(a)(2). *See Kollodge v. State,* 757 P.2d 1028, 1033 (Alaska 1988); *Ballard v. Stich,* 628 P.2d 918, 920 (Alaska 1981). Finally, the bifurcation of administrative functions along the legislative/adjudicative facts distinction is recognized in both federal and other state courts.[8]

The formal grievance complaint filed by both McGrath and Mohr does not explicitly distinguish between legislative facts and administrative facts. The grievance complaint alleges "[i]nappropriate placement of former community college faculty in rank.... Inappropriate denial of tenure for certain former community college faculty.... Discriminatory treatment by UA administration against grievants."

█ Upon remand, it will be left to the parties and the grievance council to identify any claims of McGrath and Mohr involving legislative facts, as such issues are not controlled by the adjudicative provisions of the APA.

B. *Does application of the APA to University of Alaska's grievance proceedings impermissibly circumscribe explicit and implicit constitutional and statutory grants of power to the University in the area of personnel management?*

As to this issue, we again refer to and adopt the reasoning of Judge Serdahely in

*Aden v. University of Alaska.* In rejecting the same argument as the University makes in the case at bar, Judge Serdahely stated,

> Nor does the Court find that the application of the APA to Defendant's grievance procedure violates provisions of Alaska's Constitution establishing the University of Alaska and its Board of Regents. Likewise, the Court is unpersuaded that requiring Defendant to comply with the APA in connection with its grievance procedure constitutes unconstitutional or impermissible interference with the internal affairs or academic freedom of the University. In this Court's view, the University's academic freedom is strengthened, rather than undermined, by the existence of a grievance procedure for adverse employment decisions which comports with the basic requirements of the APA and due process. *Ultimately, if Defendant seeks to be exempted from the workings of the APA, it must seek such remedy from the Legislature, not this Court.*

(Emphasis added).

### III. CONCLUSION

The judgment of the superior court is REVERSED and the matter is REMANDED for further proceedings consistent with this opinion.[9]

**8.** *See* 1 K. Davis, *Administrative Law Treatise* § 7.06 (1958) and cases cited therein. *Ballard* defined the test for determining when an agency is engaging in adjudication as "functional." 628 P.2d at 920. "Whenever an entity which normally acts as a legislative body applies policy to particular persons in their private capacities, instead of passing on general policy or the rights of individuals in the abstract, it is functioning as an administrative agency within the meaning of Appellate Rule [602(a)(2)]." *Id.; Kollodge,* 757 P.2d at 1033.

**9.** Our resolution of the appeal has made it unnecessary to address any of the other issues and arguments raised by the parties.

On remand, we suggest that it would not be inappropriate for the grievance council to integrate the adjudicatory provisions of the APA into its grievance procedures by following the hearing procedures outlined by Judge Serdahely in his August 25, 1987 "Order Regarding Administrative Hearing," which was entered in the *Aden* case.