**J. Brian MATTHEWS, Appellant,**

v.

**UNIVERSITY OF ALASKA,
Fairbanks, Appellee.**

**No. S–6855.**

Supreme Court of Alaska.

Nov. 8, 1996.

---

Arthur Lyle Robson, Robson Law Office, Fairbanks, for Appellant.

Jonathan K. Tillinghast, Simpson, Tillinghast, Sorensen & Lorensen, Juneau, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

COMPTON, Chief Justice.

### I. INTRODUCTION

J. Brian Matthews, a former employee of the University of Alaska, Fairbanks (UAF), filed a grievance disputing UAF's determination of his period of service with UAF. UAF's Grievance Council (Council) denied his request for a hearing. On appeal, the superior court affirmed the Council. Matthews appeals. We affirm.

### II. FACTS AND PROCEEDINGS

Matthews was a professor at UAF's Geophysical Institute (GI) in the early 1980's. He took sabbatical leave in England during the 1983–84 academic year.[1] In February 1984 Matthews requested an extension of his leave. UAF denied his request. It informed Matthews that if he did not return he would be required to repay the salary and benefits he had received while on sabbatical.

Matthews did not return to UAF. Juan Roederer, Director of GI, informed Matthews in August 1984 that he considered Matthews to have abandoned and resigned from his position effective June 30, 1984.[2]

---

1. Matthews's sabbatical was originally scheduled for the 1982–83 academic year, but was delayed.

2. In his letter to Matthews, Roederer stated: "As far as I know, your accrued retirement benefits are fully vested.... [I]f you ... complete and return the enclosed personnel forms, I will do my best to insure that you promptly receive any amounts which may be due you for accrued leave, retirement fund refunds, etc." Matthews apparently completed the retirement forms in September 1984; he did not then receive any retirement fund refund.

Citing his service to UAF, UAF did not seek reimbursement for the salary it had paid Matthews during his sabbatical leave.

In March 1985 Matthews received a benefits projection from the State's Division of Retirement and Benefits (DRB), which included Matthews's contract salary for the 1983–84 academic year as one of the three years used in computing his average salary. In early 1993, Matthews applied to begin receiving his retirement benefits. On the basis of information it received from UAF–GI, DRB determined that Matthews was not entitled to credit for the 1983–84 academic year because he had not returned to UAF following his sabbatical. Therefore, it used an earlier, less remunerative year in computing Matthews's three highest years' salary average. It computed his retirement benefits correspondingly. DRB informed Matthews of its determination in March 1993.

Over the next several months, Matthews exchanged correspondence with DRB, the President of UAF, and Patty Kastelic, Executive Director of the University of Alaska Statewide Office of Human Resources, as he continued to press his case for inclusion of the salary and service credit from 1983–84 in the computation of his retirement benefits.

In June 1993 Kastelic informed Matthews that his 1983–84 academic year contract salary was not used in calculating the three years' average because he had not earned the salary projected in the contract;[3] thus, 1983–84 was not one of his three highest-pay years. She further wrote, "I regret that you have so long misunderstood the details of your three highest years of income credit.... Unfortunately, all timelines for inter-nal appeal of this issue have long passed and any grievance would now be found untimely." Matthews continued to pursue his claim with Kastelic.

In an August 12, 1993 letter to Matthews, Kastelic confirmed that his earnings for the 1983–84 academic year properly were excluded from the salary average calculation. She also confirmed that he was not entitled to service credit for his sabbatical leave because he never returned to UAF. However, she acknowledged that UAF had erred in not refunding to Matthews the retirement contributions he had made during the period for which service credit was subsequently denied. Kastelic included with her letter a check for the full amount of his contributions, $5797.74. She informed him that the letter was her final disposition of the matter and UAF's internal grievance process allowed him forty-five days to file a grievance.[4] She enclosed a copy of UAF's grievance policy.

On September 2 Matthews sent a response to Kastelic, which read in part: "This is formal notification that I intend to appeal to the grievance committee as offered in your letter." However, he did not file his request for a hearing with the Council until February 9, 1994, approximately 120 working days from the date of Kastelic's letter and eighty days beyond the deadline. His request included no explanation for the delay.

On March 2 the Council informed Matthews that it had denied his request for a hearing because it was untimely.[5] On April

---

3. While on sabbatical Matthews received full pay, but only for the half-year ending December 31, 1983.

4. Kastelic's letter reads in part:

In view of the fact that you did not know the accurate details of your retirement credit, I now believe that it is appropriate for you to pursue a review through the University of Alaska's internal grievance process if you should choose to do so. I am including a copy of the policy. Given the prolonged and disjointed nature of the relevant correspondence this year, I will support your request for an extension of timelines beyond the forty-five days indicated in this policy. Please note that it is the responsibility of the grievance council to grant or deny an extension and also to determine "whether there is a reasonable likelihood that the matter complained of was a violation, misinterpretation, or improper application" of a Board of Regents policy or a university regulation.

This letter represents my final comments on this matter. If you choose to grieve I encourage you to do so immediately as I believe the necessary documentation to review your claim is complete.

5. The Council reported that it would have considered Matthews's request, even though untimely filed, had he submitted it close to the 45-day deadline.

Although untimeliness was the principal basis for the Council's decision, the decision did not address the merits of Matthews's case. The decision states:

You should also be aware that the council discussed your request before deciding that it

5 the Chancellor of UAF informed Matthews that she accepted the Council's determination that his grievance was untimely, and dismissed his grievance on that basis.

On appeal to the superior court, Appellate Rule 602(a)(2), the court affirmed the Council on the ground that Matthews had waived the right to challenge the Council's decision by failing to address on appeal its timeliness determination. The superior court further concluded that the Council's decision not to waive the deadline to appeal was not an abuse of discretion.

Matthews appeals on three grounds. First, he argues that his request for a hearing was not untimely because it was unclear that the forty-five-day time limit for requesting a grievance hearing had begun to run with Kastelic's August 12, 1993 letter. Second, he argues that this court's precedents require UAF to decide Matthews's grievance on the merits. Finally, Matthews argues that UAF should be estopped from demanding his compliance with the timeliness provisions of the grievance policy because UAF also failed to comply with these provisions.[6]

## III. *DISCUSSION*

### A. *Standard of Review*

 When the superior court acts as an intermediate court of appeal, no deference is given to the superior court's decision; we independently review the merits of an administrative determination. *Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992). We review an agency's decision not to extend a filing deadline for abuse of discretion. *See Mortvedt v. State, DNR*, 858 P.2d 1140, 1142 n. 4 (Alaska 1993); *Forquer v. State, Commercial Fisheries Entry Comm'n*, 677 P.2d 1236, 1244 (Alaska 1984).

### B. *The Council Did Not Abuse Its Discretion by Denying Matthews's Request for a Hearing.*

#### 1. *The grievance policy's deadlines are clear; Kastelic clearly informed Matthews that they had begun to run.*

Alaska Statute 14.40.170(b)(1) provides that "[t]he Board of Regents may adopt reasonable rules, orders, and plans with reasonable penalties for the good government of the university and for the regulation of the Board of Regents." Consistent with this grant of authority, the Board has adopted a grievance policy for the resolution of disputes involving university employees. *See McGrath v. University of Alaska*, 813 P.2d 1370 (Alaska 1991).

 The Board of Regents' grievance policy outlines a multi-step process for the resolution of grievances. Step 1 involves attempts at informal resolution "at the lowest administrative level having the authority to resolve the matter." Step 2 involves informal presentation of the grievance to the Step 1 respondent's "immediate supervisor." Step 3 of the policy provides that "[i]f the grievance is not resolved in Step 2, and the grievant elects to proceed with the grievance, the grievant shall present a written request for a hearing to the grievance council." Step 3 further provides:

> The request to the grievance council for a hearing shall be made within 15 working days of receipt of the response from the supervisor in Step 2, or within 45 working days of the occurrence giving rise to the grievance, or within 45 working days of the date on which the grievant has learned, or

was not timely. Several aspects of this case were discussed, but the one that kept surfacing was the fact that University Regulations required that your salary should have been refunded to the University when you chose not to return from sabbitical [sic] leave. Had this regulation been enforced, there would have been no question that FY84 was not to be counted toward your retirement, and presumably there would be no basis for your grievance.

**6.** UAF argues that Matthews has waived his right to challenge the superior court's finding of waiv-

er because he did not contest the issue in his points on appeal or his opening brief to this court. Further, it argues that the superior court correctly concluded that Matthews had waived the right to challenge the Council's decision by failing to address the Council's timeliness determination in his appeal to the superior court. Because our review of the propriety of the Council's decision leads us to conclude that this appeal can be decided on that basis, we do not address UAF's waiver arguments.

should reasonably have learned, of such occurrence, whichever is later.

In our view, this language clearly provides that the longest Matthews reasonably could have expected to have to file his request was forty-five working days from the date of the final Step 2 response.

Matthews argues that his request for a hearing was not untimely because it was unclear to him that Step 2 of the grievance process had been closed by Kastelic's August 12, 1993 letter. Matthews states:

> The letter was from Patty Kastelic, executive director of the Statewide Office of Human Resources. Nowhere in the letter, or elsewhere, have we found any indication that Patty Kastelic was the alter-ego for either Neta Stilkey or the head of the Geophysical Institute on the Fairbanks Campus. Ms. Kastelic was, in fact, according to her representations and stationary [sic], from a different grievance system (Statewide Services), and a stranger to the grievance system as it involved this grievance. If Professor Matthews is to follow the terms of the Grievance Rules, Ms. Kastelic is a *non-sequitur* and has no effect on the grievance process.

The argument is without merit. Kastelic's letters clearly demonstrate that she was an employee of UAF, not "from a different grievance system," and that she was thoroughly familiar with Matthews's case. More-

over, the argument is disingenuous in light of Matthews's September 2 response to Kastelic's August 12 letter: "This is formal notification that I intend to appeal to the grievance committee as offered in your letter." [7]

*2. There is no precedent or policy mandating the relaxation of deadlines which have been inexcusably ignored.*

Matthews argues that policy and precedent "favor resolution on the issues rather than on procedural technicalities." While we have held that the refusal to relax a deadline for appeal can constitute an abuse of discretion, we have done so where no clear final order existed, or where the final order did not specify the time period for filing an appeal.[8] Neither circumstance is present here. Kastelic stated clearly that her August 12 letter represented her final disposition of the matter and that Matthews' next step was to seek review before the Council. Both Kastelic's letter and the grievance policy she included with it state that the grievant has forty-five days within which to request a hearing before the Council.

For the grievance process to function effectively, UAF must be free to establish reasonable procedural rules and to demand reasonable compliance with them. Under the circumstances presented in this case, we are not persuaded that there is any reason based on policy or precedent for requiring UAF to

---

7. In his reply brief to the superior court, Matthews argued that his request for hearing was timely filed because his September 2, 1993 letter to Kastelic was a notice of appeal and request for hearing. He apparently has abandoned this argument. Matthews's September 2 letter does not satisfy the minimum requirements for a request for a hearing established by the Regents' policy, and it was delivered to Kastelic, rather than to the Council as stipulated in the policy.

8. *See Owsichek v. State, Guide Licensing and Control Board,* 627 P.2d 616, 622 (Alaska 1981), in which the court stated:
 Where an agency's determination of a case is expressed otherwise than in a formal order, the "finality" of such informal expressions, for purposes of judicial review, depends, it seems, upon what characterization best serves the equities of the case. A letter or other informal expression, if it is apparently intended to stand as a determination of a pending matter, may

sometimes be considered a final order if the party seeking the appeal treats it as such. But if the party receiving such informal advice from an agency does not realize that it is intended as a definitive order, and delays filing an appeal until (after the expiration of the normal period for seeking review) he is later apprised of its intended significance, it is held that the appeal should not be dismissed as being filed too late.
 *Id.* (quoting 2 Frank E. Cooper, *State Administrative Law* 592–93 (1965)); *see also Manning v. Alaska Railroad Corp.,* 853 P.2d 1120, 1123–24 (Alaska 1993).
 For an example of a case in which the court upheld the superior court's refusal to relax a deadline for appeal, *see Powers v. State, Public Employees' Retirement Board,* 757 P.2d 65, 67–68 (Alaska 1988) (dismissal of an appeal filed four days past deadline not error).

relax its deadlines and address the merits of Matthews's claim.

3. *UAF's failure to meet policy deadlines does not estop it from requiring Matthews's reasonable compliance with the deadlines.*

Matthews argues that UAF should be estopped from requiring compliance with the timelines established in the grievance policy because UAF did not follow them. Specifically, he argues that he did not receive a response to his Step 2 appeal,[9] notice of the Council's determination, or notice that the Chancellor had accepted the Council's recommendation to dismiss his request within the deadlines set out in the grievance policy. Matthews offers no authority in support of this argument, and his argument is without merit.

## IV. CONCLUSION

The Grievance Council did not abuse its discretion in finding that Matthews's request for a hearing was untimely filed. The judgment of the superior court is AFFIRMED.

---

**9.** The Regents' policy provides that the supervisor responding to the grievant at Step 2 "shall investigate the grievance ... and respond to the grievant in writing within ten (10) working days from the date the grievance was presented." Consistent with his argument that Step 2 of the grievance process never closed, *see* III.B.1., *supra*, Matthews argues that the Step 2 "designated supervisor has failed to respond to grievant at all, let alone within the ten day working period set forth by [the Regents' policy]."

From what can be gleaned from the record, it appears that Matthews's last communication with Kastelic prior to her August 12 letter was on July 3, an interval of approximately 25 working days. Thus, it appears Kastelic's response was approximately 15 days late according to the timeline established in the Regents' policy. In her August 12 letter, Kastelic did not refer to the deadline for her response. However, she wrote:

Once again I apologize for the delay of my response. Your inquiry has involved many people and it has taken me more time than anticipated to address all of the questions you and others have asked and to document the answers.