Brenda L. SOKOLOWSKI, Appellant,

v.

**BEST WESTERN GOLDEN LION HOTEL and Fireman's Fund Insurance Company, Appellee.**

No. 3705.

Supreme Court of Alaska.

June 14, 1991.

Chancy Croft, Anchorage, for appellant.

Susan L. Daniels and Allan Tesche, Russell & Tesche, Anchorage, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

Brenda Sokolowski was injured while on her way to work. The Workers' Compensation Board ("Board") denied her claim for workers' compensation because she was not on her employer's premises at the time of the accident. The superior court affirmed the Board. We reverse.

## I. FACTS

Brenda Sokolowski worked part-time at Best Western Golden Lion Hotel ("Golden Lion") as a cocktail waitress. She also worked full-time for a law firm as a legal secretary. At the Golden Lion, Sokolowski worked the evening shift from nine to two on weekends. On Saturday evening, January 21, 1989, Sokolowski fell and fractured her wrist while on her way to work at Golden Lion. As a result, she missed approximately six weeks of work at Golden Lion, although she was able to continue working at her other job. She suffered no permanent impairment from her injury.

Golden Lion is located in Anchorage, on the south side of 36th Avenue, and east of New Seward Highway. Golden Lion has a ninety-three space parking lot on its premises. However, Golden Lion reserves its lot for customers, and requires that employees park off the premises.

Most employees park across from Golden Lion on 36th Avenue in a lot adjacent to the IRS building ("IRS lot"). Thirty-sixth Avenue is a busy four-lane street. At the intersection of New Seward Highway and 36th Avenue, there is a crosswalk, controlled by a walk/do not walk signal, for crossing 36th Avenue. The record before the Board shows, however, that most employees, including Sokolowski, walk directly across 36th Avenue, rather than detour down 36th Avenue to the crosswalk at New Seward Highway. Indeed, at the Board hearing on her claim, Sokolowski testified that at the time of the accident, she was not aware that there was a crosswalk at New Seward Highway.

During the winter, the sidewalks of 36th Avenue frequently become buried with snow, which is piled up on the side of the street during snow removal. Given this condition, Sokolowski's co-workers testified that in order to get to the crosswalk during winter, they would have to walk in the street. According to some of the witnesses, this would be more dangerous than walking straight across 36th Avenue from the IRS lot to Golden Lion.

At the hearing, a Golden Lion manager testified that it was "common knowledge" that Golden Lion employees were parking in the IRS lot, and that the hotel had "verbal, unofficial permission" from previous owners of the IRS lot allowing Golden Lion employees to park in the lot, so long as they did not park immediately adjacent to the building. After the ownership of the IRS lot changed, Golden Lion employees continued to park in the lot, and Golden Lion management continued to instruct employees not to park next to the IRS building.

On the night of her accident, Sokolowski parked in the IRS lot. She walked directly across 36th Avenue from the lot to Golden Lion. While crossing 36th Avenue, she slipped and fell on her wrist. Sokolowski described 36th Avenue as being "really icy" that night, but admitted that other roads in Anchorage were icy as well.

Sokolowski filed a workers' compensation claim for the six weeks of work she missed at Golden Lion and for her medical expenses. The Board denied the claim, concluding that Sokolowski was not in the course and scope of her employment as defined by the Workers' Compensation Act, AS 23.30.265(2) ("Act"). The Board specifically found that Sokolowski was "engaged in a personal activity when she was injured; that is, walking on a public street on her way to work."

The Board concluded that Sokolowski's claim was controlled by the "going and coming" or "premises" rule, which generally disallows compensation for injuries incurred while the employee travels to and from work. The Board considered the "special hazard" exception to the going and coming rule, but concluded that it did not apply to Sokolowski's claim for two reasons. First, the Board found that Golden Lion had not required Sokolowski to park in the IRS lot, and thus she could have parked elsewhere and taken other routes to her employer's premises. Second, the Board concluded that "there was no 'special hazard.'" The Board reasoned that because streets in Anchorage are generally slippery during winter, "there is no distinct or causal connection between the conditions under which Employee traveled to Employer's premises and the occurrence of the injury." Additionally, the Board held that the presumption of compensability did not apply to this case, but if it did, Golden Lion had rebutted the presumption.

■ Sokolowski appealed and the superior court affirmed. This appeal followed.[1]

## II. DISCUSSION

### A. *The Going and Coming Rule*

The Workers' Compensation Act provides for a comprehensive system of compensation for injuries to employees. AS 23.30.-005–.270. The Act defines injury to mean "accidental injury or death arising out of and in the course of employment." AS 23.30.265(17). It further defines "arising out of and in the course of employment" as "employer-required or supplied travel to and from a remote job site; activities performed at the direction or under the control of the employer; and employer-sanctioned activities at employer-provided facilities; but exclud[ing] activities of a personal nature away from employer-provided facilities." AS 23.30.265(2).

■ Under the "going and coming rule," travel between home and work is considered a personal activity, and injuries occurring off the work premises during such travel are generally not compensable under workers' compensation acts. *See generally* 1 A. Larson, *Workmen's Compensation,* § 15 (Desk ed. 1990). The going and coming rule is well-established in Alaska, this court having recognized it in *RCA Service Co. v. Liggett,* 394 P.2d 675, 677–78 (Alaska 1964), and reaffirmed it in *Kodiak Oilfield Haulers,* 777 P.2d at 1149, and in *State, Dep't of Highways v. Johns,* 422 P.2d 855, 856 (Alaska 1967). Sokolowski's injury occurred off her employer's premises while she was on her way to work. Therefore, in order to succeed in her claim, Sokolowski must qualify for an exception to the going and coming rule.

### B. *The Special Hazard Exception*

We have previously recognized exceptions to the going and coming rule. *Johns* established a "special errand" exception. 422 P.2d at 860 (employer request that employee drive his own car to an alternative work site, with pay and gas provided,

---

1. The parties do not dispute the underlying facts about the injury and how it occurred. This appeal is over whether these facts are within the scope of the Act. This presents a question of statutory interpretation, which does not involve the Board's special expertise. *Kodiak Oilfield Haulers v. Adams,* 777 P.2d 1145, 1148 (Alaska 1989). Therefore, in determining the scope of the Act, we will substitute our judgment for that of the Board. *Id.*

constitutes a special errand exception to the going and coming rule). *M–K Rivers v. Schleifman*, 599 P.2d 132 (Alaska 1979), recognized a remote site exception to the going and coming rule. *See also* AS 23.30.-265(2). Many jurisdictions have a "special hazard" exception to the going and coming rule. *See* 1 A. Larson, *supra*, at § 15.13. We have not previously ruled on whether a special hazard exception applies in Alaska.

According to Professor Larson, the special hazard exception is the majority rule. *See* 1 A. Larson, *supra*, at § 15.13. This exception to the going and coming rule has been applied when the "off-premises point at which the injury occurred lies on the only route, or at least on the normal route, which employees must traverse to reach the plant, and that therefore the special hazards of that route become the hazards of the employment." *Id.* § 15.13, at 4–22.[2] *See, e.g., Littlefield v. Pillsbury Co.*, 6 Ohio St.3d 389, 453 N.E.2d 570 (1983); *General Ins. Co. of America v. Workers' Compensation Appeals Bd.*, 16 Cal.3d 595, 128 Cal.Rptr. 417, 546 P.2d 1361 (1976).

2. Larson continues,

> This general idea seems to have been accepted by the majority of jurisdictions in some degree. Two Supreme Court cases, the *Parramore* case and the *Giles* case, have lent prestige to this view. In the former, an accident at an intersection of a country road and a railroad 100 feet from the plant was held compensable, because this was the *only* means of access to the plant; and in the latter, the same result was reached when the point in question was on the most convenient, though not the only, route. The clearest case for compensability, of course, is found when the off-premises route is the *only* means of access to the premises. In a California case, compensation was awarded for the death of an employee who was killed by a train on a crossing twenty feet from the factory gate, on a path between the public road and the factory entrance, since this was the sole authorized means of ingress and egress. But the special-hazard exception has been applied also when the off-premises route, while not the exclusive means of access, was the "usual" or "expected" or "regularly used" route. Conversely, if a reasonably safe and convenient route is available, and if the employee chooses a substantially more dangerous route, the exception will not be applied. A typical example is walking along a railroad right-of-way instead of a road.

A purpose of Alaska's workers' compensation law is to provide injured workers with a simple and speedy remedy to compensate them for work related injuries. *Fairbanks North Star Borough v. Rogers and Babler*, 747 P.2d 528, 531 (Alaska 1987). We believe that adoption of the special hazard exception to the going and coming rule will facilitate that purpose. Accordingly, we hold that an injury to an employee caused by a special hazard located on the employee's normal or usual route to work is compensable under the Act, if it meets the elements of the exception outlined below.[3]

### C. The Elements of the Special Hazard Exception

In regard to the going and coming rule, Professor Larson has explained, "[t]he real reason for the premises rule is, and always has been, the impracticality of drawing another line at such a point that the administrative and judicial burden of interpreting and applying the rule would not be unmanageable." 1 A. Larson, *su-*

1 A. Larson, *supra*, § 15.13, at 4–22 to –25 (footnotes omitted, emphasis in original).

3. Cases from other jurisdictions which have applied the special hazard exception to find a compensable injury include *Bechtel Corp. v. Winther*, 262 Ark. 361, 556 S.W.2d 882 (1977) (employee died when his car left a causeway at a curve approximately one quarter mile from the work premises on public road that was used daily by plant employees; causeway was found to be a special hazard, even though not immediately adjacent to plant); *In re Welham*, 653 P.2d 760 (Colo.App.1982) (where employer required off-premises parking and most convenient other parking required walking across a railroad track, the railroad crossing became a special hazard); *Goff v. Farmers Union Accounting Service, Inc.*, 241 N.W.2d 315 (Minn.1976) (busy street between parking lot, not owned by employer, and place of work found to be a special hazard); *Ingalls Shipbuilding Div., Litton Systems, Inc. v. Dependents of Sloane*, 480 So.2d 1117 (Miss.1985) (dangerous intersection of access road used by 90% of employees is a special hazard when there is no practical alternative route and employer knew of the danger to employees); *Montgomery v. State Indus. Account Comm'n*, 224 Or. 380, 356 P.2d 524 (1960) (busy public street which employee must cross to get to work when on-premises parking lot is full is a special hazard; employer had some control over cross-walk mechanism).

*pra*, § 15.12(b), at 4–13 to –14. Similarly, the California Supreme Court concluded that, "[t]he 'premises line' has the advantage of enabling courts to ascertain the point at which employment begins—objectively and fairly." *General Ins. Co. of America*, 546 P.2d at 1363.[4]

Professor Larson has identified a "range of risk" principle to explain the exceptions which have developed to the premises rule. 1 A. Larson, *supra*, § 15.15, at 4–28. He believes this principle, properly exercised by courts, will keep the exception in check. As he explains,

> the concept of "course of employment" follows that of "arising out of employment"; that is, the employment-connected risk is first recognized, and then a course-of-employment theory must be devised to permit compensation for that obviously occupational risk. This is exactly what has happened in [the special hazard cases]. Claimant has been subjected to a particular risk because of his employment, the risk of crossing certain railway tracks near the plant entrance, for example. Since it is so obvious that a causal relation exists between the work and the hazard, the always-illfitting course of employment concept has got to be stretched at least far enough to prevent the injustice of denying compensa-

tion for an injury admittedly caused by the employment.

We have, then, a workable explanation of the exception to the premises rule: it is not proximity, or reasonable distance, or even the identifying of surrounding areas with the premises; it is simply that, when a court has satisfied itself that there is a distinct "arising out of" or causal connection between the conditions under which claimant must approach and leave the premises and the occurrence of the injury, it may hold that the course of employment extends as far as those conditions extend.

*Id.*

California has squarely addressed this question, and has devised a test for when a special hazard exists. *General Ins. Co. of America*, 546 P.2d at 1363. First, the injury must be causally related to the employment. Second, the hazard which caused the injury must be "distinctive in nature or quantitatively greater than risks common to the public." *Id.* at 1364; *see also Littlefield*, 453 N.E.2d at 575 (adopting the same test under Ohio law). We believe that this test, in conjunction with the requirement that the employee be on a usual or normal route to work, strikes the proper balance between the going and coming rule and the special hazard exception.[5]

---

**4.** We reject Sokolowski's argument that "where the employer derives benefit from the employee's activity, the injury should be compensable." Sokolowski draws this argument from *M–K Rivers v. Schleifman*, 599 P.2d 132 (Alaska 1979), which established the remote site exception. Indeed, *Schleifman* did rest partly on the rationale that employers derive a benefit from having the employee located at a remote site, making compensable injuries that occur off the employer's premises when at a remote site.

We distinguish the remote site situation from more usual employment where the employee has fewer constraints in her choices for after-work activity. Because anything which increases an employee's well-being also arguably benefits the employer, using "employer benefit" as the criterion for determining the scope of the Act would eliminate the statutory requirement that the injury be incurred in the "course of employment."

Sokolowski also urges us to distinguish between winter and summer use of Golden Lions' parking lot based on the economics of parking demand. She argues that employees should be allowed to park in Golden Lions' lot in winter,

but not necessarily in summer. In summer there are fewer available parking spaces because there are more tourists. Sokolowski concludes that workers' compensation liability should attach for the denial of parking in winter. Apparently, Sokolowski wants a broad rule that the Board must determine whether policies adopted by the employer are economically mandated. If not, Sokolowski thinks worker injuries caused by that policy, which would otherwise not be compensable, should be compensable. We reject this argument. The Board need not consider whether the employer breached a duty of care by not providing a service which it could have provided at little cost to itself.

**5.** *Golden Lion* acknowledges that the components of the special hazard exception are "the presence of a special hazard at a particular off-premises point," and "that the hazard is located on the *only* route or the normal route which employees must cross to reach a place of employment." Golden Lion stresses that the risk created must be "over and above the risk to any member of the general public." We note

### D. *The Decision of the Board*

The Board correctly anticipated our adoption of the special hazard exception to the going and coming rule, and applied it to Sokolowski's claim. Moreover, the Board applied the *General Insurance* test; it rejected Sokolowski's claim in part because it found no hazard quantitatively greater than that faced by the general public. However, we conclude that the Board erred in its decision in the following respects: (1) by failing to apply the presumption of compensability to its determination of whether a special hazard existed; (2) by determining, in the alternative, that the presumption had been overcome by substantial evidence; (3) by failing to find that use of a normal or usual route to work can be compensable under the special hazard exception; and (4) by failing to recognize that crossing a street, when there is no safe alternative route to work, can create quantitatively greater risks than those common to the general public.

#### 1. *The application of the presumption*

AS 23.30.120 establishes a presumption of compensability, which places the burden of producing evidence on the employer.[6] The Board determined that the presumption of compensability provided for in AS 23.30.120 does not apply to the going and coming rule. However, we have held that "the presumption of AS 23.30.120 places a burden on the employer to go forward with evidence on the issue of whether the injury arises outside or within the scope of employment." *Anchorage Roofing Co., Inc. v. Gonzales,* 507 P.2d 501, 504 (Alaska 1973).

The issue in *Anchorage Roofing* was whether injuries sustained on a dual purpose trip, for business and for pleasure, were compensable. There we held that the claimant was entitled to the presumption

on the evidentiary issues involved in that determination. *Id.* at 505. Here, the issue before the Board was whether Sokolowski's injury arose out of her employment.

■ To resolve the question of whether the special hazard exception applies to Sokolowski, the Board must determine whether she was on a usual route to work at the time of the accident, whether her employment was a cause in fact of the injury, and whether the hazard she undertook was quantitatively greater than risks taken by the general public. Each prong of this test contains evidentiary questions, and Sokolowski is entitled to the presumption of compensability as to each of those questions.[7]

■ The Board also determined that even if the presumption applied to Sokolowski, Golden Lion had overcome the presumption by proving that "the injury occurred off Employer's premises and before Employee began working." This reasoning is erroneous because it amounts to a conclusion that the presumption does not apply to the special hazard exception. It is obvious that an injury caused by a special hazard must necessarily occur off the premises and during non-working hours.

#### 2. *The normal route to work*

■ To be compensable, an injury caused by a special hazard must have occurred on the only, normal, or expected route to or from the place of employment. *See* 1 A. Larson, *supra* § 15.13, at 4–24. The Board denied Sokolowski's claim because it found that at the time she was injured, she was engaged in a noncompensable personal activity. It based this holding on the fact that Golden Lion did not require Sokolowski to park at the IRS lot,

---

that there is nothing in the special hazard exception that limits it to transportation by automobile.

**6.** The relevant portion of AS 23.30.120 states, (a) In a proceeding for the enforcement of a claim for compensation under this chapter it is presumed, in the absence of substantial evidence to the contrary, that

(1) the claim comes within the provisions of this chapter....

**7.** The presumption shifts only the burden of production, not the burden of proof. *Wien Air Alaska v. Kramer,* 807 P.2d 471, 474 n. 4 (Alaska 1991).

and thus Sokolowski's injury was not in the course of employment.

█ Under the special hazard exception, however, the crucial fact is not whether Sokolowski was required to park in any particular lot. The crucial question is whether Golden Lion, by virtue of its location and its parking policy, exposed its employees to a special hazard. *See In re Welham,* 653 P.2d 760, 762 (Colo.App. 1982). Under the Board's formula, there can be no compensable hazard so long as the employee has an alternative route.

Rarely will an employer specify what route an employee must use. The absence of an order requiring a particular route, however, will not prevent recovery. Here, the employer knew that employees were parking in the IRS lot, and indeed, at one time even had an informal arrangement with the owners of the IRS lot regarding employee parking. At the hearing, Sokolowski presented the testimony of three fellow Golden Lion employees, each of who testified to using the IRS lot.

█ Thus, there is evidence in the record that Sokolowski was following a normal route to work at the time she was injured. However, this court will not weigh the evidence on appeal. *Burgess*

*Const. Co. v. Smallwood,* 623 P.2d 312, 317 (Alaska 1981). On remand, the Board should determine whether Sokolowski was on a normal or usual route to work at the time of her injury, taking into account that the presumption of compensability applies to this question.[8]

### 3. *The quantitatively greater risk test*

The Board rejected Sokolowski's claim, in part, because it determined that "there was no special hazard." The Board reasoned that "slipping on the icy street was a hazard to which the general public was exposed to in most places in Anchorage on January 21, 1989."

█ We agree with the Board that slipping on an icy street in Anchorage in winter is a common hazard.[9] However, the Board, in our view has overlooked a crucial aspect of Sokolowski's injury—the fact that it occurred in the middle of 36th Avenue, at a location where the general public usually does not cross.

█ It is not unreasonable to assume that the public does not generally cross 36th Avenue from the IRS lot to Golden Lion. When the general public goes to Golden Lion, it parks in Golden Lion's lot.

8. The Board's decision accepts that Sokolowski's employment was a cause in fact of her injury. But for her employment at Golden Lion, Sokolowski would not have crossed 36th Avenue at 9:00 p.m. on January 21, 1989. *See General Ins. Co. of America,* 546 P.2d at 1364. Thus, the Board correctly applied the causality element of the special risk exception.

9. There is a divergence in the case law over how to apply the quantitatively greater risk element of the special hazard exception. Sokolowski argues for a very expansive reading of the words "quantitatively greater." In Sokolowski's view, this test is satisfied by "increased frequency." Here, Sokolowski argues that the quantitatively greater risk element is satisfied because the "hotel's employees crossed 36th Avenue far more frequently and in more adverse conditions than a member of the general public would." In support, Sokolowski cites *Littlefield v. Pillsbury Co.,* 6 Ohio St.3d 389, 453 N.E.2d 570 (1983). In *Littlefield,* the Ohio Supreme Court applied the "quantitatively greater" test, and ordered compensation for an injury incurred at a dangerous left turn at the only entrance to the plant. At least part of the finding of a "quanti-

tatively greater risk" was based on the increased frequency of making that left turn. *Id.* 453 N.E.2d at 575.

"Increased frequency," however, does not provide a workable measure to determine when a risk faced by employees is quantitatively greater than risks faced by the general public. Every employee on his or her way to work takes a certain route with more frequency than does the general public. Even a comparatively safe route has some risk which is thereby multiplied; mere increased frequency does not, however, elevate that risk to a "special hazard."

California has rejected the increased frequency formulation. In *General Ins. Co. of America,* an employee arrived at work early and parked on the street. As he got out of his car, he was struck and killed by a passing vehicle. The California Supreme court held that the employee "was parked on a public street at a time and in a location where parking is available to the general public. The fact that he was struck by a passing motorist, while tragic, is a type of risk the public is subject to daily." 546 P.2d at 1364. Therefore, the court found the death not compensable under workers' compensation. 546 P.2d at 1365.

Pedestrians usually walk on sidewalks and crosswalks. If jaywalking across 36th Avenue between the IRS lot and Golden Lion—the normal route taken by Golden Lion employees—is more dangerous than walking to the Golden Lion from Golden Lion's own parking lot or crossing at a typical controlled intersection, then this risk is quantitatively greater than that faced by the general public.[10]

We emphasize that the act of crossing a street at an unsafe location, standing alone, would not necessarily create a special hazard. The Board must also consider whether there was any practical and safe alternative. There is widespread agreement in the case law that if the employee chooses to ignore a safe convenient route to work, and takes extra risks to save a few steps, an injury incurred on the risky route would be outside the scope of workers' compensation.[11] However, where there is no reasonably safe and convenient alternative, the special hazards of the route to work become part of the course of employment.[12]

In our view, the Board on remand must decide the foregoing issues.[13]

## III. CONCLUSION

In sum, we adopt the special hazard exception to the going and coming rule in workers' compensation cases, and hold that the presumption of compensability applies to the factual determinations necessary to decide whether a claim falls within that exception. As indicated above, the Board applied the wrong rule of law to Sokolowski's claim in finding that no special hazard existed. Therefore, the Board should redetermine whether Sokolowski's injury was caused by a special hazard in the course of her travelling to her workplace; it should

10. Golden Lion argues that Sokolowski's injury is not compensable because it was not the result of a particular and identifiable special hazard. Golden Lion maintains that the only hazard created when employees crossed 36th Avenue was the hazard of "being struck by a car."

There is no merit to this argument. We agree that if the only risk is that of crossing a street no more slippery than normal Anchorage streets, it does not create a special hazard. We also agree that an accident unrelated to the special hazard is not compensable. However, inherent in the increased risk of crossing a busy, slippery street, where a pedestrian must hurry to avoid being hit by a car, is the risk of falling.

11. See, e.g., Henderson's Portion Pak v. Cotera, 294 So.2d 309 (Fla.1974) (employee's injury was not compensable when she chose unsafe route from parking lot, not owned by employer, to work and there was a safe alternative that was at most thirty feet longer); Pulliam v. McDonnell Douglas Corp., 558 S.W.2d 693 (Mo.App. 1977) (employee killed while taking short-cut along railroad adjacent to employer's premises was not covered by workers' compensation).

12. See Welham, 653 P.2d at 762 (injury incurred in parking lot was compensable where "employees were not required to use the subject parking lot exclusively, [but] the lot was the most convenient lot for access to employer's premises"); Ingalls Shipbuilding 480 So.2d at 1119 (absence of practical alternative route to avoid danger establishes special hazard exception).

13. The Board may choose to make these determinations on the existing record, or it may choose to take additional evidence to determine how great a risk the employees of Golden Lion took relative to the general public, and whether they had safe and practical alternatives. There is evidence on these questions in the record, but it conflicts. For example, Sokolowski and one colleague testified that they did not even know of the existence of a crosswalk. Inconsistently, the co-worker also stated that, in any event, walking down to the crosswalk would be more dangerous than jaywalking. A second co-worker testified that she was aware of the crosswalk, but did not use it because she did not want to walk in the street. Yet, another co-worker testified that she jaywalked in order to save time. The manager of Golden Lion testified that Sokolowski could walk safely to the Golden Lion.

Moreover, it is not clear from the record whether 36th Avenue's sidewalks are always unpassable, or whether that condition only occurs after plowing. The Board might choose to determine from this record whether or not 36th Avenue's sidewalks are generally unsafe. See Burgess, 623 P.2d at 317. Alternatively, the Board might conclude that it needs more evidence to determine whether they were unsafe on the night in question. See Grainger v. Alaska Workers' Compensation Bd., 751 P.2d 1355 (Alaska 1988) (on remand for reconsideration in light of new determination of law, "[t]he Board may take such additional evidence it deems necessary for a proper resolution of the issues raised.") Similarly, the Board might consider whether it would be unreasonably dangerous for Sokolowski to walk from her car down to the crosswalk at New Seward Highway at nine o'clock on Saturday night.

apply the presumption of compensability and the elements of the special hazard exception outlined above.

REVERSED and REMANDED to the superior court with directions to remand to the Board for further proceedings consistent with this opinion.