**William G. WITMER and Mary J. Witmer, Appellants,**

v.

**George M. KELLEN and Wit–Rey, Inc. d/b/a Kentucky Fried Chicken, Appellees.**

No. S–5883.

Supreme Court of Alaska.

Nov. 25, 1994.

Robert A. Sparks, The Law Office of Robert A. Sparks, Fairbanks, for appellants.

Ann S. Brown and Shauna F. Morris, Guess & Rudd, Fairbanks, for appellee Kellen.

Christopher E. Zimmerman, Call, Barrett & Burbank, Fairbanks, for appellee Wit–Rey, Inc., d/b/a Kentucky Fried Chicken.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

*OPINION*

MOORE, Chief Justice.

William G. Witmer is the president and sole shareholder of Wit–Rey, Inc., d/b/a Kentucky Fried Chicken ("Wit–Rey"). Witmer was injured in November 1990 while riding as a passenger in a vehicle driven by George M. Kellen, the manager of the Fairbanks Kentucky Fried Chicken restaurant. William and his wife, Mary J. Witmer, brought this personal injury action against Kellen and Wit–Rey, asserting that Kellen's negligence resulted in William's injuries and that Wit–Rey was liable under the doctrine of respondeat superior.

The superior court, Judge Mary E. Greene, granted summary judgment in favor of Kellen and Wit–Rey after finding as a matter of law that William's injuries arose out of and in the course of his employment as defined under AS 23.30.265(2). As a result, the court held that the Alaska Workers' Compensation Act provides the Witmers' exclusive remedy. The sole question on appeal is whether William's injuries "arose out of and in the course of employment" as a matter of law. We affirm.

### I.

In the fall of 1990, William Witmer was the president and sole shareholder of Wit–Rey, which at that time operated 6 Kentucky Fried Chicken franchises in Anchorage and Fairbanks. In his deposition, William testified that it was his usual practice to work seven days a week, six to twelve hours per day. He spent roughly two-thirds of his time in the Fairbanks business.

As manager of the Fairbanks franchise, George Kellen was responsible for the daily operation of that business. This responsibility included scheduling and supervising employees. William testified in his deposition that he liked his store managers to have their own cars so that they could respond to any emergencies at the store, deliver orders to customers, and sometimes pick up employees who needed transportation to work. William stated that this last item was left to the manager's discretion; the manager could

leave to pick up an employee for work or he could elect to work shorthanded for the shift.

In the afternoon of November 25, 1990, Kellen was preparing to drive to an assistant manager's house to help the assistant jump start his car so he could get to work. William decided to go along for the ride. He stated: "It was just a dreary afternoon. There was nothing doing so I thought, heck, I'll ride over with him if he doesn't object." William stated that he did not plan to assist Kellen in jump starting the car, and he had no business purpose in going for the ride. According to William, his sole reason for riding with Kellen was to take a break from work.

En route to the assistant manager's house, Kellen's truck was involved in an accident with another vehicle, and William sustained injuries. William and his wife then brought this negligence action against Kellen and Wit–Rey. In pursuing Wit–Rey under the doctrine of respondeat superior, the Witmers acknowledged that Kellen was acting within the course and scope of his duties at the time of the accident. Despite Kellen's work-related purpose in the errand, however, the Witmers argued that William was not acting in the course of his duties in accompanying Kellen. Instead, he was simply on a break for personal enjoyment. As a result, the Witmers argued that the exclusive remedy provision of the Workers' Compensation Act did not apply. *See* AS 23.30.055.

The superior court conducted two inquiries to resolve the defendants' argument that workers' compensation provides the Witmers' exclusive remedy. Applying AS 23.30.240, the court first found as a matter of law that William was an employee of Wit–Rey.[1] This finding has not been appealed. The court next addressed whether William's injuries "arose out of and in the course of employ-

ment" as defined in AS 23.30.265(2). Relying on *Luth v. Rogers & Babler Construction Co.*, 507 P.2d 761 (Alaska 1973) and *Marsh v. Alaska Workmen's Compensation Board*, 584 P.2d 1134 (Alaska 1978), the court concluded that even if William was on a break at the time of the accident, the trip with Kellen was closely related to William's employment. In light of this fact, the court found that reasonable people could not disagree that William's injuries arose out of and in the course of his employment, and it granted Kellen's motion for summary judgment. The Witmers appeal this determination.

## II.

We review a grant of summary judgment de novo. *McGrath v. University of Alaska*, 813 P.2d 1370, 1371 n. 1 (Alaska 1991). We must determine whether any material issue of fact exists and whether the moving party is entitled to judgment as a matter of law. *Darling v. Standard Alaska Prod. Co.*, 818 P.2d 677, 679 n. 5 (Alaska 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1176, 117 L.Ed.2d 421 (1992). In making this determination, we will draw all reasonable inferences in favor of the non-moving party. *Korman v. Mallin*, 858 P.2d 1145, 1148 (Alaska 1993).

## III.

Alaska's Workers' Compensation Act provides a comprehensive system of compensation for injuries to employees. *See* AS 23.30.005–.270. Under AS 23.30.055, workers' compensation is an employee's exclusive remedy against an employer and any fellow employees for work-related injuries.[2] The Workers' Compensation Act defines an "injury" to include an "accidental injury or death arising out of and in the course of employment." AS 23.30.265(17). "Arising out of and in the course of employment" is defined

---

1. AS 23.30.240 states in part: "An executive officer ... is an employee of the corporation under this chapter. However, an executive officer of a corporation may waive coverage under this chapter, subject to the approval of the commissioner of labor...." There is no dispute that William is an executive officer of Wit–Rey and that he did not file a waiver of workers' compensation coverage pursuant to this section.

2. AS 23.30.055 states in part:
   The liability of an employer prescribed in AS 23.30.045 is exclusive and in place of all other liability of the employer and any fellow employee to the employee, the employee's ... wife ... and anyone otherwise entitled to recover damages from the employer or fellow employee at law or in admiralty on account of the injury or death.

to include "employer-required or supplied travel to and from a remote job site; activities performed at the direction or under the control of the employer; and employer-sanctioned activities at employer-provided facilities; but excludes activities of a personal nature away from employer-provided facilities." AS 23.30.265(2).

The Witmers argue that William was on a personal outing when he was injured. They contend that William's injury "did not occur at the employer's premises, no evidence exists that any of [William's] acts were performed under the direction or control of the employer and there is no evidence that the injury occurred at any employer-sanctioned activities or at employer-provided facilities." They further cite to William's deposition testimony that his reasons for riding with Kellen were personal, not business-related, and claim that this testimony is "controlling and dispositive" of this case.

Even viewing William's testimony about his purpose in the light most favorable to the Witmers, however, the Witmers cannot overcome the strong business connection inherent in William's presence on Kellen's work-related errand. This court has stated on numerous occasions that the concept of work connection establishes coverage under our Workers' Compensation Act. "The test is that 'if the accidental injury or death is connected with any of the incidents of one's employment, then the injury or death would both arise out of and be in the course of such employment.'" *M–K Rivers v. Schleifman,* 599 P.2d 132, 134–35 (Alaska 1979) (quoting *Northern Corp. v. Saari,* 409 P.2d 845, 846 (Alaska 1966)); *see also Luth,* 507 P.2d at 764 ("Workmen's compensation benefits turn solely upon whether the employee was injured while performing an activity related to his job—and 'relatedness' is usually a function of benefit to the employer.").

■ An employee's activity that has both personal and business elements is not per se noncompensable under the workers' compensation rules. *Marsh,* 584 P.2d at 1136; *Anchorage Roofing Co. v. Gonzales,* 507 P.2d 501, 504–07 (Alaska 1973). If the activity is "reasonably foreseeable and incidental" to the employment, it falls under the workers'

compensation system. *Marsh,* 584 P.2d at 1136; *Anchorage Roofing,* 507 P.2d at 505; *see also Northern Corp.,* 409 P.2d at 846.

Thus, in *Marsh,* this court determined that a bartender's injuries were not compensable since they resulted from a fight after the bartender kissed a patron's wife while on a break, an activity "wholly unconnected to [the bartender's] employment." 584 P.2d at 1136. Similarly, in *M–K Rivers,* 599 P.2d 132, we suggested that to exclude an injured worker from workers' compensation benefits, the "line is drawn only at those cases where an employee had become 'so thoroughly disconnected from the service of his employer that it would be entirely unreasonable to say that injuries suffered by him arose out of and in the course of his employment.'" *Id.* at 135 n. 4 (quoting *O'Keeffe v. Smith, Hinchman & Grylls Assocs.,* 380 U.S. 359, 362, 85 S.Ct. 1012, 1014, 13 L.Ed.2d 895 (1965)). Accordingly, we held that an employee injured while driving 30 miles from a remote worksite to a nearby town to cash his paycheck was covered by workers' compensation, since the drive was "reasonably contemplated and foreseeable by the employment situation." 599 P.2d at 136. *See also LeSuer–Johnson v. Rollins–Burdick Hunter,* 808 P.2d 266, 267 (Alaska 1991) (per curiam) (employee's injury sustained while playing on employer-sponsored softball team arose out of and in the course of employment); *Anchorage Roofing,* 507 P.2d at 504–07 (pilot's detour from a business flight to explore terrain for a future hunting trip did not render the trip a personal one outside the scope of workers' compensation coverage); *Northern Corp.,* 409 P.2d at 846–47 (worker's death arose out of and in the course of employment where the worker was killed while returning to a remote worksite after using nearby employer-arranged recreational facilities).

■ In this case, William's decision to accompany Kellen on his job-related errand was both reasonably foreseeable and contemplated by his employment. Prior to November 1990, William had accompanied Kellen on other errands Kellen ran for Wit–Rey. According to William, these errands consisted largely of going to Castle Warehouse, where Kellen would pick up supplies for the restau-

rant. William characterized these outings as purely personal and added that his presence would not have aided Kellen in performing Kellen's duties. William stated, "I've probably ridden with him just to get the hell out of the restaurant but . . . there wouldn't be any advantage to him. That wouldn't be any help." However, the point is not whether William's presence would have assisted Kellen in discharging his managerial duties, but whether William's presence was related to his employment. In this case, there is clearly a sufficient work connection to support such a conclusion as a matter of law. As Kellen's boss, William's presence on his employee's business errand necessarily relates to William's employment and will invoke workers' compensation coverage, even if William considered his break to be wholly unrelated to Wit–Rey's business.

Other considerations also support this result. First, William testified that prior to the accident, he and Kellen did not socially interact outside of work, and that William's only real social interaction with Kellen occurred when William would accompany Kellen on his job-related errands. This suggests that William's relationship with Kellen was in fact a professional one, and William's trips accompanying Kellen were connected to his work. Equally important is the obvious fact that any action by Kellen in furtherance of his managerial duties directly benefits William, as a senior employee who is ultimately responsible for the conduct of his subordinate employees.[3]

In addition, William's position as president and sole shareholder of Wit–Rey cannot be ignored. Due to his executive role, William had a great deal of flexibility and discretion regarding his daily activities, including the

tasks that he performed for the business. For this reason, the Witmers' observation that William's presence with Kellen was not directed or controlled by the "employer" is unpersuasive. Since William is the president and sole shareholder of Wit–Rey, he *is* the "employer" and presumably has the sole authority to define or control his daily activities.

William also had the authority to make decisions regarding the tasks of his subordinate employees, including Kellen. As Kellen argued before the superior court, it would be reasonable for Kellen to feel that he could not decline his boss's request to ride along on a job-related errand. While on that errand, William necessarily would observe Kellen's job performance, thereby obtaining insights and information that could be meaningful to other job-related matters, such as Kellen's performance evaluations or overall job security. This is true even if William did not assist Kellen or otherwise participate in the errand itself.

For these reasons, William's presence with Kellen at the time of the accident simply cannot be characterized as an event unrelated to William's employment. Despite the fact that William derived some personal satisfaction in accompanying Kellen on his errands, there is a strong nexus between William's employment and his injuries. Accordingly, we conclude that William's injuries "arose out of and in the course of employment."[4]

### IV.

In sum, William's activities were contemplated by and closely connected to his employment with Wit–Rey. Accordingly, even

---

**3.** In response to the question "Do you supervise the store managers?", William stated, "I'm ultimately responsible for everything they do."

**4.** The Witmers argue that the superior court erroneously concluded that Kellen's work-related purpose was dispositive of the question whether William's injuries were work-related. This characterization of the court's ruling is inaccurate. The trial court found that Kellen was clearly acting within the course and scope of his duties at the time of the accident. This finding was simply to highlight the business-related nature of the outing as well as the resulting business-relat-

ed benefit accruing to William in his capacities as Kellen's supervisor and as sole shareholder of Wit–Rey. The court further relied on William's past errands with Kellen to conclude that William's presence at the time of the accident was foreseeable and reasonably contemplated by his employment. Thus, the court's discussion of Kellen's status and job responsibilities was to emphasize the strong work connection arising from William's presence during Kellen's errand, not to suggest that Kellen's status is controlling of the result in this case.

viewing the evidence in the light most favorable to the Witmers, reasonable people could not dispute whether William's injuries arose out of and in the course of his employment. William's activities satisfy this requirement as a matter of law. Workers' compensation therefore provides the Witmers' exclusive remedy, and the superior court properly granted summary judgment in favor of Kellen and Wit–Rey.

AFFIRMED.

EASTAUGH, Justice, with whom RABINOWITZ, Justice, joins dissenting.

I dissent because, in my view, there is a genuine dispute about why William Witmer was riding in George Kellen's automobile at the time of the accident.

At his deposition, Witmer testified that he was riding in the vehicle more for social purposes than for business purposes. In his affidavit, Witmer stated that he had already decided to take a break from work and was preparing to go for a walk when he heard that Kellen would be leaving shortly to jump start a co-employee's car. He explained in his affidavit that he went with Kellen because "he was leaving at the right time as I was preparing to leave and it was convenient for me to ride with him, rather than take a walk myself or ask around for a ride from someone else." Witmer further affied that when he accepted the ride with Kellen, and while he rode in Kellen's car before the accident, he did not consider himself at work or performing any work for the company. Witmer did not file a workers' compensation claim after the injury.

Witmer's testimony is equivocal. He did not squarely deny that his presence in the vehicle may have been motivated in at least small part by some purpose of advancing the business. A jury might choose to reject Witmer's testimony altogether and could find that he actually accompanied Kellen at least

in part for reasons directly or indirectly related to his course of employment. Likewise, a jury might decide that Witmer harbored a joint purpose in accompanying Kellen and was not motivated exclusively by personal or social reasons. A jury might conclude he also intended to check on the status of the Wit–Rey employee whose car Kellen intended to jump start, or intended to observe Kellen in a work-related activity, or even intended to associate with his employees to build morale. The jury's conclusions might well turn on Witmer's credibility.

Nonetheless, given Witmer's deposition testimony and affidavit, reasonable jurors would not be compelled to find that his injuries arose out of his employment or were suffered in the course of it. Witmer's explanation is not so improbable as to be incredible. In my view, Witmer's testimony creates a genuine issue of material fact which cannot be resolved on summary judgment.

It is of no consequence that, for purposes of asserting a workers' compensation claim, an employee who has been injured while engaged in a recreational break may be able to argue successfully that the injury arose out of and was suffered in the course of employment. *LeSuer–Johnson v. Rollins–Burdick Hunter of Alaska*, 808 P.2d 266 (Alaska 1991); *M–K Rivers v. Schleifman*, 599 P.2d 132 (Alaska 1979). Moreover, the statutory presumption of compensability may substantially aid a workers' compensation claim. AS 23.30.120(a)(1).[1]

Authority interpreting the Alaska Workers' Compensation Act does not establish that the Alaska Workers' Compensation Board would have been obliged to rule for Witmer if he had filed a workers' compensation claim, nor does it establish that Witmer's tort claim against his employer is barred as a matter of law by the exclusive liability section of the Alaska Workers' Compensation Act. AS 23.30.055. Given the evidence, there are issues of fact which must be re-

1. But compare the definition of "arising out of and in the course of employment" found in AS 23.30.265(2):

(2) *"arising out of and in the course of employment"* includes employer-required or supplied travel to and from a remote job site; activities performed at the direction or under the control

of the employer; and employer-sanctioned activities at employer-provided facilities; but *excludes activities of a personal nature away from employer-provided facilities.*

(Emphasis added.) I do not consider Kellen's car to be an "employer-provided facilit[y]."

solved by the appropriate fact finder. If the employee brings a tort suit, the appropriate fact finder is the trial jury. If the worker files a workers' compensation claim, the appropriate fact finder is the Alaska Workers' Compensation Board.

In short, Witmer's deposition testimony and affidavit create sufficient question about his purpose that they present a genuine fact dispute which must be resolved by a fact finder.

I would consequently reverse the summary judgment entered in favor of Kellen and Wit–Rey.