**Ann E. MALONE, Widow and Guardian of Dependent Children, Cameron Elias and Matthew Malone, and Estate Of Jeffrey Malone, Appellants,**

v.

**LAKE AND PENINSULA BOROUGH SCHOOL DISTRICT, Employer, and Alaska National Insurance Company, Its Workers' Compensation Insurance Carrier, Appellees.**

No. S–7999.

Supreme Court of Alaska.

June 4, 1999.

---

Christine Schleuss, Suddock & Schleuss, Anchorage, for Appellants.

Theresa Hennemann, Holmes Weddle & Barcott, Anchorage, for Appellees.

Before MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

BRYNER, Justice.

### I. *INTRODUCTION*

Ann Malone was injured and Jeffrey Malone was killed while flying from Anchorage to visit a remote Alaska village and school where they expected to begin teaching two weeks later. The Workers' Compensation

Board denied Jeffrey's estate, his dependents, and Ann benefits, concluding that the accident did not arise in the course of their employment. Because the record shows that Ann and Jeffrey's employer did not control their activities and did not require or supply their travel, and because their travel falls outside the "special hazard exception" to the usual rule that a worker's travel to and from work is not compensable, we must affirm the Board's decision.

## II. FACTS AND PROCEEDINGS

Ann and Jeffrey Malone, both experienced teachers, moved with their two sons from Kansas to Alaska in June 1994 to seek teaching positions in the bush. They stayed for the summer with Jeffrey's sister, Michelle Coburn, and her husband, Bret.

In early August 1994 Ann and Jeffrey attended a job fair sponsored by the Alaska Teacher Placement Agency in Fairbanks. At the fair, they interviewed with Ron Jones, Assistant Superintendent for the Lake and Peninsula School District (LPSD). Jones was looking for a married couple to fill teaching positions at a school in the village of Kokhanok. Satisfied with the Malones' qualifications, Jones told them that they were LPSD's first choice for teaching positions at the school and that he would recommend them to the LPSD school board for hiring. Jones informed them that only the school board had authority to hire them, but that the board had always adopted his hiring recommendations. He also showed the Malones the pay schedule for LPSD's teachers and told them about their posts. The Malones excitedly "accepted" Jones's "offer" of employment and called the Coburns to share their good news, telling the Coburns that Jones had hired them.

After returning to Anchorage, the Malones met Kokhanok school principal Sara Hornberger, who happened to be passing through town; they asked her about bush life and their new jobs. The Malones also spoke with Jones by telephone. In addition, they received written materials from LPSD directing them to attend in-service training in King Salmon beginning August 23 and to be prepared to move directly from King Salmon to Kokhanok. LPSD instructed the Malones to arrange commercial travel to King Salmon, which it would reimburse; LPSD was to arrange commercial travel from King Salmon to Kokhanok.

Based on LPSD's directions and on advice they received from Jones and Hornberger, the Malones purchased four one-way tickets to King Salmon and mailed food and medical supplies to Kokhanok in sufficient quantities to last through December. Although the Malones had not yet signed formal contracts, they expected to receive them during in-service training in King Salmon; the school board was scheduled to meet there and approve new contracts on August 26.

While preparing for their year in Kokhanok, the Malones decided that they wanted to visit the village and school before their in-service training began. Their minister, Stephen Anderson, apparently a veteran bush pilot, agreed to fly them. Hornberger discouraged this trip, telling the Malones that the school would be locked up and inaccessible to them and that many village residents would be away fishing. The Malones nevertheless contacted Jones and told him that they wanted to visit Kokhanok. Jones advised them that flying to Kokhanok could be risky because of bad weather and warned them against flying with inexperienced pilots. He ultimately agreed that if the Malones decided to come, he would try to meet them at the village airstrip.

The Malones arranged for Anderson to fly them to Kokhanok on August 16. Before departing that morning, they left a telephone message at LPSD's King Salmon office telling Jones that they were on their way to the village. Jones, who evidently had been required to travel elsewhere that day, did not receive the Malones' message until later. The Malones failed to reach Kokhanok. Bad weather evidently forced them to turn back; Anderson's plane crashed near Big Lake, killing Anderson and Jeffrey, and severely injuring Ann. Jones did not hear of the accident until the following day.

Through counsel, Ann Malone filed workers' compensation claims on her own behalf and on behalf of Jeffrey's estate, alleging that the trip to Kokhanok was work related. LPSD controverted the claims, asserting that the Malones were not employees when the

accident occurred and that, in any event, their injuries did not arise in the course of their employment.

At a hearing before the Workers' Compensation Board, Ann presented evidence that she and Jeffrey had attempted to visit Kokhanok primarily to tour the school and assess the available teaching supplies and materials, so that they could supplement any deficiencies with materials purchased or borrowed in Anchorage. Because Jeffrey had not survived the accident and Ann's injuries had impaired her memory and ability to testify, their case consisted largely of testimony from friends and relatives who had spoken to the Malones before they flew to Kokhanok.

In opposition, LPSD presented evidence indicating that the primary, perhaps sole, purpose of the Malones' visit was personal—to see the village and possibly investigate housing.

The Board concluded that an express employment contract existed between the Malones and LPSD. Nevertheless, the Board denied the claims, ruling that Ann's injuries and Jeffrey's death did not arise in the course and scope of their employment.

In reaching this decision, the Board rejected, as uncorroborated hearsay, most of the evidence offered concerning the Malones' purpose in visiting Kokhanok. Considering the evidence it deemed admissible, the Board ruled that Ann had failed make a preliminary showing that the accident was work related. The Board further ruled that, even if Ann had made the requisite preliminary showing, LPSD's evidence had established that the purpose of the Malones' visit was to investigate housing and living conditions. Because the Board deemed this to be a personal activity, and because the accident occurred away from their employer's facility, the

Board concluded that their injuries did not arise in the course and scope of employment.

Ann appealed to the superior court, challenging the Board's conclusion that the accident did not occur in the course and scope of the Malones' employment. LPSD cross-appealed, challenging the Board's ruling that an employment contract already existed when the accident occurred. The superior court ruled against Ann on both points, reversing the Board's finding of an employment contract and affirming its decision as to course and scope of employment.

Ann appeals both rulings.

## III. DISCUSSION

■ Two basic requirements of workers' compensation are an employment contract[1] and an injury arising in the course of employment.[2] Ann argues that we should affirm the Board's ruling on the first requirement—its determination that an employment contract existed between the Malones and LPSD—but that we should reverse its ruling on the second requirement—its conclusion that the accident did not occur in the course of the Malones' employment as LPSD teachers.

■ In challenging the Board's conclusion that the accident occurred outside the course of employment, Anne specifically argues that the Board erred in excluding, as hearsay, crucial evidence that she contends was admissible under the state-of-mind exception to the hearsay rule.[3] She insists that this error, in turn, infected the Board's conclusions that she had failed to trigger the presumption of compensability and that LPSD had proved that the accident was not work related.[4]

■ For purposes of this decision, we will assume that the Malones had a contract

1. See *Alaska Pulp Corp. v. United Paperworkers Int'l Union*, 791 P.2d 1008, 1009–10 (Alaska 1990).

2. See *Witmer v. Kellen*, 884 P.2d 662, 664–65 (Alaska 1994).

3. See Alaska Rule of Evidence 803(3).

4. Under AS 23.30.120(a), a presumption of compensability applies to workers' compensation claims. For the presumption to attach, the

worker must establish a preliminary link between the injury claimed and the worker's employment. See *Gillispie v. B & B Foodland*, 881 P.2d 1106, 1109 (Alaska 1994). To overcome this presumption, an employer must present substantial evidence that the injury is not work related. See *id.* If the employer overcomes this presumption, the employee has the burden of proving all of the elements of the claim by a preponderance of the evidence. See *Norcon, Inc. v. Alaska Workers' Compensation Bd.*, 880 P.2d 1051, 1055 (Alaska 1994).

of employment with LPSD, that Ann's excluded evidence should have been admitted and fully credited, and that this evidence triggered the presumption of compensability. The question remaining is whether the record as a whole could support the conclusion that the Malones were injured in the course of their employment.[5] We are constrained to find that it could not.

Alaska's Workers' Compensation Act[6] defines an "injury" to include an "accidental injury or death arising out of and in the course of employment."[7] "Arising out of and in the course of employment" is defined to include

> employer-required or supplied travel to and from a remote job site; activities performed at the direction or under the control of the employer; and employer-sanctioned activities at employer-provided facilities; but excludes ... activities of a personal nature away from employer-provided facilities[.] [8]

Under these definitions, the basic test of work relatedness is whether the "accidental death or injury is connected with any of the incidents of one's employment, [and if so] then the injury or death would both arise out of and be in the course of such employment."[9] An activity that has both personal and business elements is not per se noncompensable.[10] If the activity is " 'reasonably foreseeable and incidental' to the employment," it is compensable.[11]

The essence of Ann's claim is that the Malones' primary purpose in visiting Kokhanok was to familiarize themselves with their new school and to see what school materials and supplies would be available to them, so that they could determine what additional supplies they might need to buy or borrow in Anchorage before school started. She points out that they had made arrangements to meet Assistant School Superintendent Ron Jones, who had a master key to the school and could show them through it. Given these circumstances, Ann maintains that the Malones' visit to the school was reasonably foreseeable and that its purpose was incidental to employment. Accordingly, she urges us to hold that the Malones' losses arose in the course of their employment and were therefore compensable.

But even accepting Ann's factual assertions, the foreseeability of their visit is not a foregone conclusion. Uncontradicted evidence establishes that LPSD, as a policy matter, discouraged new teachers from visiting their prospective schools before the beginning of the school year. Indeed, Assistant Superintendent Jones and Kokhanok Principal Hornberger both testified that they tried to discourage the Malones' visit.

This testimony remains undisputed. Even if we consider the evidence that the Board disregarded as hearsay, it appears that Jones at most agreed to show the Malones around the school if they decided to visit, and if he could accommodate their schedule. The Malones chose to come against Hornberger's advice, despite this uncertainty, and without actually giving Jones advance notice. As it turns out, Jones was not available for travel to Kokhanok on the day they selected and could not have shown them the school.

Moreover, even accepting the proposition that the Malones already had entered into a contract with LPSD to teach at the Kokhanok school during the forthcoming year, it is

---

5. Viewed in this manner, the appeal presents undisputed facts and raises legal questions concerning the scope of workers' compensation coverage that do not implicate the Board's special expertise; in these circumstances, we apply the substitution of judgment standard. See *Sokolowski v. Best Western Golden Lion Hotel*, 813 P.2d 286, 289 n. 1 (Alaska 1991) (citing *Kodiak Oilfield Haulers v. Adams*, 777 P.2d 1145, 1148 (Alaska 1989)); *see also Madison v. Alaska Dep't of Fish and Game*, 696 P.2d 168, 173 (Alaska 1985). We give no deference to the superior court's decision when it acts as an intermediate court of appeal. *See Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992). We thus focus our discussion on the Board's ruling.

6. AS 23.30.005–.400.

7. AS 23.30.395(17).

8. AS 23.30.395(2).

9. *Witmer v. Kellen*, 884 P.2d 662, 665 (Alaska 1994) (quoting *M–K Rivers v. Schleifman*, 599 P.2d 132, 134–35 (Alaska 1979)).

10. *See Marsh v. Alaska Workmen's Compensation Bd.*, 584 P.2d 1134, 1136 (Alaska 1978).

11. *Id.*

undisputed that the school year was not set to begin until August 23, when they were to report for in-service training in King Salmon. This circumstance distinguishes the Malones' case from the cases Ann cites to support the position that their travel was foreseeable and work related. The cited cases all involve workers who had already "started" their employment and were injured during foreseeable interruptions of their regular job duties.[12]

Ann cites no cases suggesting that an unsolicited pre-employment-term visit to a work site for a work-related reason becomes compensable merely because it is foreseeable. Nor are we aware of any authority supporting so broad a rule. In fact, Professor Larson appears to suggest that a narrower rule should apply in such situations; he writes that workers who have been hired but have not yet begun their jobs normally are compensated only if injured while actually performing a work-related task.[13]

The statutory definition of injuries "arising out of and in the course of employment" supports this narrower view of compensability and poses a further obstacle to Ann's claim. This definition, set out in AS 23.30.395(2), describes three categories of cases. But the Malones' situation fits none of these categories.

■ The first category includes injuries occurring during "employer-required or supplied travel to and from a remote job site."[14] The Malones' injuries and death did result from an accident occurring on the way to a visit to their future place of employment in a remote location. But while their purpose may have been work related, the Malones themselves had decided to make the visit. Their employer had not required them to travel or supplied the transportation.

■ The second category within the statutory definition includes injuries suffered while engaged in "activities performed at the direction or under the control of the employer."[15] Here, it is undisputed that LPSD had not directed the Malones to visit the school and had no control over their decision to do so.

■ The last category defined includes injuries resulting from "employer-sanctioned activities at employer-provided facilities."[16] But the Malones were not engaging in activities at employer-provided facilities when they were injured; their injuries occurred before they reached Kokhanok.

Viewing the facts most favorably to the Malones, it might nonetheless be argued that the last statutory category should be expanded to fit their circumstances because, while they had not yet arrived *at* an employer-provided facility, they were traveling *to* their employer's premises, where they intended to conduct a school visit that Jones had sanctioned by tentatively agreeing to meet them. But this argument generates its own unique set of problems.

■ Alaska adheres to the "going and coming rule," which deems travel to and from work noncompensable:

> Under the "going and coming rule," travel between home and work is considered a personal activity, and injuries occurring off the work premises during such travel are generally not compensable under workers' compensation acts. The going and coming rule is well-established in Alaska[.][17]

---

12. *See, e.g., Witmer*, 884 P.2d at 662–64 (in which the court considered whether an owner-supervisor, claiming to be on "break" and riding along in a vehicle driven by an employee on a work-related trip, was limited to workers' compensation remedies); *M–K Rivers*, 599 P.2d at 133 (in which the court considered whether an employee working at a remote site was covered under the "remote site doctrine"); *Anchorage Roofing Co. v. Gonzales*, 507 P.2d 501, 502 (Alaska 1973) (in which the court considered whether an employee, traveling on a work-provided plane to a job site, was precluded from recovery because the plane had deviated from a direct route to the site for personal reasons); *see also Northern Corp. v. Saari*, 409 P.2d 845, 845–46 (Alaska 1966).

13. *See* 2 Arthur Larson, *Larson's Workers' Compensation Law* § 26.25 (1998).

14. AS 23.30.395(2).

15. *Id.*

16. *Id.*

17. *Sokolowski v. Best Western Golden Lion Hotel*, 813 P.2d 286, 289 (Alaska 1991) (citation omitted).

■ Recognizing that the going and coming rule might stand in the way of her claim, Ann argues that this case falls within the "special-hazard exception" to the rule. This exception applies when the "off-premises point at which the injury occurred lies on the only route, or at least the normal route, which employees must traverse to reach the [workplace], and ... therefore the special hazards of that route become the hazards of the employment."[18] Under the exception, "an injury caused by a special hazard must have occurred on the only, normal, or expected route to or from the place of employment."[19] Thus, the employer must compensate workers for injuries sustained traveling to and from work if three conditions are met: "First, the injury must be causally related to the employment. Second, the hazard which caused the injury must be 'distinctive in nature or quantitatively greater than risks common to the public.' [Third,] the employee [must] be on a usual or normal route to work[.]"[20]

Ann alleges that all three conditions for the special-hazard exception are present. First, she argues that they were traveling to Kokhanok for work-related purposes—to look through the school and check out their classrooms, supplies, and equipment. Second, she maintains that "the risks of [flying in a small airplane] are distinct in nature." Third, she argues that "their flight plan showed they intended [to fly] the usual route from Anchorage to Kokhanok."

■ Our discussion of this case assumes that Ann meets the first element of the exception—the requirement that the travel be for a work-related purpose. Her arguments nonetheless fall short on the second and third elements.

■ To meet the second element of the special-hazard exception, the evidence must show that flying from Anchorage to Kokhanok somehow exposed the Malones to a "special risk causally related to employment."[21] Ann argues that the risks of flying in a small airplane are distinctive. But this argument misses the point of the requirement. To be "special," the risk must be "distinctive in nature or quantitatively greater than risks common to the public."[22] In other words, the risk itself must relate to the Kokhanok school premises or affect its employees in some distinctive way that does not similarly affect others.

Ann does not allege that the risks of flying to Kokhanok in a small plane are unique to LPSD employees. In fact, the evidence is to the contrary. Sara Hornberger, principal of Kokhanok school, testified that the only practical way to reach Kokhanok is by plane and that, for this reason, many of the village residents pilot private aircraft. Thus, although bush flying may indeed be risky, the risk is a common one borne by most members of the general public who travel to a village like Kokhanok; it is more incidental to bush life than to employment with LPSD.[23] We find no evidence that the hazard was "distinctive in nature."

■ The evidence similarly fails to sustain the special-hazard exception's third element, which requires the injury to occur "on the only, normal, or expected route to or from the place of employment."[24] Ann argues that they flew the usual route from Anchorage to Kokhanok. But this argument fails to squarely address the requirement. The problem is that the usual and normal route between Anchorage and Kokhanok is

---

18. *See id.* at 290 (quoting 1A Larson, *Workmen's Compensation* § 15.13, at 4–22 (Desk ed.1990)).

19. *See id.* at 292.

20. *See id.* at 291 (citations omitted).

21. *General Ins. Co. of America v. Workers' Compensation Appeals Bd.*, 16 Cal.3d 595, 128 Cal. Rptr. 417, 546 P.2d 1361, 1363 (1976) (cited with approval by *Sokolowski*, 813 P.2d at 293 n. 9).

22. *See Sokolowski*, 813 P.2d at 291 (quoting *General Ins. Co.*, 128 Cal.Rptr. 417, 546 P.2d at 1364). In *Sokolowski*, the court explained that

"quantitatively greater" could not mean merely "increased frequency" because such a measure would be unworkable. *Sokolowski*, 813 P.2d at 293 n. 9.

23. *See id.* at 293 & n. 9 (noting that exposure to dangerous conditions common to the general public, such as icy streets, even frequent exposure, will not support the special-hazard exception).

24. *See id.* at 292.

not the same thing as the usual and normal route that a typical Kokhanok school teacher would be expected to take to and from school.

The history and language of the special-hazard exception suggest that it is intended to draw into the workers' compensation system risks that are closely tied to the workplace and repeatedly confronted. Historically, according to Professor Larson, factories were situated near railroads, so that the only way to get to work was to "pick. one's way through switching tracks, sidings, and even main lines. To deny workers' compensation to employees injured because of the necessity of *daily* running such a gauntlet struck most courts as out of tune with the broad concept of work-connection." [25] Accordingly, courts developed the special-hazard exception.

The Malones had not yet begun to teach in Kokhanok and had no usual or normal route to work. They expected to move to the village of Kokhanok once their teaching duties began. Obviously, once they began their jobs, their normal route to work would not involve flying. The same is true of other Kokhanok teachers, who are routinely expected to live in the village during the school year. Nor would newly-hired teachers—or any other LPSD employees, for that matter—normally be required or expected to fly from Anchorage to Kokhanok for a pre-school-year visit. To the contrary, undisputed evidence establishes that LPSD went out of its way to discourage summer visits by new teachers; and for most teachers arriving at the beginning of the school year, LPSD arranged transportation to Kokhanok by commercial carrier directly from its headquarters in King Salmon. That LPSD may have acquiesced in the Malones' decision to come to Kokhanok for a school visit did not make their flight from Anchorage their "only, normal, or expected route to [work.]" [26]

Accordingly, even when the totality of evidence is viewed in the light most favorable to Ann, it could not sustain her claims. LPSD did not require the Malones to travel to the school or supply their transportation; their activities were not performed at the direction or under the control of their employer; and, while LPSD—through Jones—arguably sanctioned their visit to the school, their losses occurred while traveling to the school under circumstances covered by the going and coming rule, rather than by the special-hazard exception.

Although the Malones' eagerness to visit their new school was certainly understandable and their purpose in deciding to make the visit was undeniably commendable, the settled standards of the Alaska Workers' Compensation Act do not permit the conclusion that their losses arose "out of and in the course of employment." [27]

## IV. CONCLUSION

For these reasons, we AFFIRM the Board's decision denying compensation.

---

25. 1 Arthur Larson, *Larson's Workers' Compensation Law* § 15.13(b), at 4–38, 4–39 (1998) (emphasis added).

26. *See Sokolowski*, 813 P.2d at 292.

27. AS 23.30.395(17).